SUPREME LODGE KNIGHTS OF PYTHIAS *v.* ROZALIE STEIN.

1. BENEVOLENT SOCIETY.   *Charter.   Power to legislate.   Delegation of same.*
    The power to legislate given by charter to the supreme lodge of a
    benevolent society cannot be delegated by such lodge to a board
    of control that is a mere subordinate administrative agency.

2. SAME.   *Benefit insurance.   Anti-suicide law.*
    Although an application for increased insurance in the endowment
    rank of a benevolent society contains a condition of forfeiture in
    the event of the member's suicide, and the benefit certificate for
    such increased insurance is, by its terms, subject to the conditions
    of the application, the fact of suicide is no defense to an action on
    the certificate, when the anti-suicide law which gave rise to the
    condition was adopted without authority by a board of control
    having no legislative power, only a few days prior to the applica-
    tion, and never enacted or ratified by the supreme lodge, the only
    competent authority, nor duly published, prior to the member's
    death.

FROM the circuit court of Leflore county.

HON. R. W. WILLIAMSON, Judge.

This was an action for $5,000 brought by Rozalie Stein on a
benefit certificate for that sum issued to her husband, Marx
Stein, on the twenty-third of January, 1893, by the board of
control of the endowment rank, Knights of Pythias, under the

seal of the supreme lodge. The certificate was, by its terms, subject to the conditions expressed in the application, and the application contained a condition of forfeiture in the event of the member's suicide. The certificate recited, as part of the consideration thereof, the compliance by Stein with all the laws then in force or that might thereafter be enacted by the supreme lodge or the board of control. The anti-suicide law that gave rise to the condition was adopted by the board of control on January 12–13, 1893. The clause in the charter of the association on the subject of the endowment rank is as follows: "That the supreme lodge shall have power to establish the uniform rank and the endowment rank upon such terms and conditions, and governed by such rules and regulations as to the said supreme lodge may seem proper."

There had been, prior to Marx Stein's death, no enactment by the supreme lodge of an anti-suicide law, nor any enactment ratifying the provision adopted by the board of control in respect to suicide, nor had the said provision been published in the official journal of the supreme lodge. The defendant, the supreme lodge, pleaded the condition against suicide, and the fact of suicide by plaintiff's husband, the deceased certificate holder. The plaintiff replied, setting up want of authority in the board of control to adopt the anti-suicide law, and made the charter of defendant, and all amendments thereof, and the constitution adopted for the endowment rank, part of her replication. The defendant demurred to these replications on the grounds (1) that, by section 6, article 2, of the constitution adopted for the endowment rank by the supreme lodge, said rank was authorized to issue certificates in sums as high as $5,000, under the general laws adopted by the board of control of the endowment rank, and that said condition against suicide is contained in the form of application prescribed by section 3 of article 11 of the said general laws adopted October 22, 1892, in pursuance of the authorization contained in said constitution; and (2) that, whether authorized or not, the condition against suicide

was a condition precedent to the execution of the contract evidenced by the certificate sued on, without which said contract would not have been entered into, and the said contract, as entered into and containing said condition, is the only one existing between the parties and is indivisible, and, if void in part, is void *in toto*.

The demurrer was overruled, and, defendant declining to plead further, judgment was rendered in favor of plaintiff for the amount sued for, whereupon defendant appealed.

*Nugent & Mc Willie*, for appellant.

1. The deceased member, desiring to increase his insurance, surrendered a former certificate for $3,000 and applied for one of $5,000. There is a condition against suicide in the written application for this $5,000 certificate, which itself is made subject, by its terms, to all the conditions expressed in the application, the two instruments together forming one contract, as in ordinary life insurance contracts. Without this condition against suicide, the contract would never have been entered into, and the certificate issued and delivered to the deceased. *Doe, Caillaret* v. *Bernard*, 7 Smed. & M., 319.

The contract is an entire and indivisible one, and if this essential condition is void for the reason urged, it does not lie in the mouth of the plaintiff to say so, since she relies on and is seeking to enforce a contract that grows out of and rests upon that very condition. *McCoy* v. *Northwestern Mutual Relief Association*, 92 Wis., 577; *Dunlap* v. *Petrie*, 35 Miss., 590; *Bank of Newberry* v. *Stegall*, 41 Miss., 142; *Wooten* v. *Miller*, 7 Smed. & M., 380.

The condition in question is not to be classed among the things that are either *mala per se* or *mala prohibita*. On the contrary, it is in aid of public policy, as going to discourage suicide. The breach of it is in a matter that the parties manifestly treated as vital to its existence, and in such cases the promisee is discharged. 3 Am. & Eng. Enc. L., 914.

---

If the plaintiff relies upon the contract, she must take it in its entirety. If she wants to disaffirm it, and it is indeed void for want of authority in the board of control, and illegal, her only remedy is to seek a rescission on that ground, and on a count for money had and received, a recovery of the premiums or assessments paid. 27 Am. & Eng. Enc. L., 367–371, and notes; *Pittsburg, C. & St. L. R. Co.* v. *Keokuk & H. Bridge Co.*, 131 U. S., 371 (33 L. ed., 157); *Dill* v. *Wareham*, 7 Met., 438; Green's Brice's Ultra Vires, 2d ed., note p. 729.

Everyone dealing with a corporation is presumed to know the extent of its powers. 1 Bacon, Ben. Soc. & Life Ins., sec. 81; *State Board of Agriculture* v. *Citizens' Street Ry. Co.*, 47 Ind., 407. If the plaintiff has not performed his part of the contract, defendant is not liable on the contract, although he may be for such expenditures as the plaintiff may have made in partial performance of the contract. *Tucker* v. *Woods*, 12 Johns., 190 (7 Am. Dec., 305); *McKinley* v. *Watkins*, 13 Ill., 140; *James* v. *Fulcrod*, 5 Tex., 513 (55 Am. Dec., 743); *Commercial Bank* v. *Nolan*, 7 How. (Miss.), 508.

In the case of concurrent considerations, the plaintiff's promise is executed, but the thing to be performed is executory. Though the acts to be done by the plaintiff are not conditions precedent, but concurrent with the thing to be done by the defendant, yet he cannot maintain an action without showing performance, or an offer to perform. *Mount* v. *Lyon*, 49 N. Y., 552; *Coonley* v. *Anderson*, 1 Hill, 519; *Giles* v. *Giles*, 9 Q. B., 164; 2 Wait, Act. & Def., 365.

2. The plea of *ultra vires* should not, as a general rule, prevail, whether interposed for or against a corporation, when it would not advance justice, but, on the contrary, would accomplish a legal wrong. *Whitney Arms Co.* v. *Barlow*, 63 N. Y., 69 (20 Am. Rep., 504); *Ohio & M. R. Co.* v. *McCarthy*, 96 U. S., 258 (24 L. ed., 693). What is bad as a by-law may be good as a contract, since "a man may part with a common right voluntarily, of which it would be impolitic and unjust to deprive

him by a by-law passed without his assent, or perhaps knowl-
edge, by those who would not consult his individual interests."
1 Bacon, Ben. Soc. & Life Ins., sec. 87; Ang. & A. Corp., sec.
342; *Austin* v. *Searing*, 16 N. Y., 112 (69 Am. Dec., 665, and
notes); *Goddard* v. *Merchants' Exchange*, 78 Mo., 609; *McCoy*
v. *Northwestern Mut. Relief Asso.*, 92 Wis., 577.

The constitution adopted for the endowment rank of the su-
preme lodge contains the general laws under which it exists and
acts, and is analogous to the charter of an ordinary mutual life
insurance company.     Bacon, Ben. Soc. & Life Ins., secs. 78-
81, 145, 146, 321.     The board of control is the equivalent of the
board of directors of the ordinary corporation, being the man-
aging body to which the entire charge and full control of the
rank is committed, with power to direct its affairs, and pass all
needful regulations for its government.     As so empowered, it
could pass such needful regulations as it might see fit, and no
matter what the amendment in question is denominated, it is, in
its nature and character, essentially a rule adopted for the reg-
ulation of the business of the rank, and duly and properly
adopted, and is binding upon all the members of that rank.     1
Bacon, Ben. Soc. & Life Ins., secs. 186–188; *Supreme Com-
mandery K. of G. R.* v. *Ainsworth*, 71 Ala., 436 (46 Am.
Rep., 332.)

As a member of the endowment rank, accepting the form of
contract prescribed by the board of control, Stein will be taken
to have assented to such rules and regulations, or laws, if you
please, as it had then, or might thereafter adopt.     1 Morawetz,
Priv. Corp., sec. 501, and cases cited.     The power of the
board to adopt all needful regulations for the government of
the rank has been recognized.     *Supreme Lodge K. of P.* v. *Ka-
linski*, 13 U. S. App., 574 (57 Fed. Rep., 348); *Theobald* v.
*Supreme Lodge K. of P.*, 59 Mo. App., 87; *Montgomery County
Farmers' Mut. Ins. Co.* v. *Milner*, 90 Iowa, 685.

The charter of the supreme lodge authorized the establish-
ment, or appointment, of this agent.     The power of appoint-

ment carried along with it the power to clothe this instrumentality with the authority necessary to perform the functions for which the agency was created, and, as well, all the authority usually exercised by those similarly employed.     1 Am. & Eng. Enc. L., pp. 348, 349, 363, 371.     The supreme lodge was authorized to appoint, and did appoint, the board of control of the endownent rank its general agent for the transaction of a life insurance business, and clothed it, in so doing, with all the power usually exercised by mutual benefit societies.     1 Bacon on Ben. Socs. & Life Ins., secs. 132, 133, 145.

One of the inherent powers of all corporations, mutual life insurance and mutual benefit concerns as well as others, is that of passing by-laws, and where an agency is established, under competent authority in every respect to serve the purpose of such an association, it must be taken to have the power to provide by-laws and other regulations for its government, especially when it appears that the only by-laws and regulations in existence are such as it has established.     1 Thomp. on Corp., sec. 955; 1 Bacon on Ben. Socs. & Life Ins., sec. 127.

The exercise of the power to make by-laws does not conflict with the general authority exercised by the supreme lodge in adopting a constitution for the endowment rank, since, even as to such by-laws, there is the reservation of a veto power. *Wilcox* v. *Routh*, 9 Smed. & M., 476; *Planters' Bank* v. *Cameron*, 3 Smed. & M., 609.

3. About eighteen months elapsed after the adoption of this amendment before the death of Stein, with full knowledge thereof by the supreme lodge, and no dissent was expressed so far as we are aware.     Acquiescence is often presumed from the absence of dissent, and the circumstances of this case fully justify the presumption.     17 Am. & Eng. Enc. L., 162, note 5; *Baughn* v. *Shackleford*, 48 Miss., 267; *Meyer* v. *Morgan*, 51 Miss., 21 (24 Am. Rep., 617); *Cotton* v. *Hiller*, 52 Miss., 8.

All the certificates issued after the adoption of the suicide amendment, of which there were, perhaps, thousands prior to

the death of the member named in this suit, were based upon a form of application that contained a condition against suicide, and as all these certificates bear the seal of the supreme lodge, the supreme lodge will be taken to have assented to such use of its seal, and so ratified the act of the board of control, until the contrary is shown. *Baker* v. *Byrnes*, 2 Smed. & M., 193; *Walker* v. *Mobile & Ohio Railroad Co.*, 34 Miss., 245; *Mississippi & Texas Railroad Co.* v. *Harris*, 36 Miss., 17; *Mayer* v. *McLure*, *Ib.*, 389; 1 Bacon on Ben. Socs. & Life Ins., sec. 80.

4. The condition against suicide is one that the supreme lodge might itself have lawfully imposed, and the objection only goes to the manner in which it was adopted, or, in other words, that the adoption by the board of control was in excess of the powers pertaining to that body. This being true, we have a case in which the doctrine of *ultra vires* cannot be invoked either for or against the corporation. 17 Am. & Eng. Enc. L., 157; *Fogg* v. *Blair*, 133 U. S., 534 (33 L. ed., 721); *Littlewort* v. *Davis*, 50 Miss., 403; *Gulf, Colorado & Santa Fe Railroad Co.* v. *James*, 4 U. S. App., 19 (48 Fed. Rep., 148); *Haynes* v. *Covington*, 13 Smed. & M., 411.

*Rush & Gardner*, for appellee.

A constitution of a voluntary association or a corporation is nothing more than a by-law under an inappropriate name. The power that can enact a by-law, whether called a constitution or not, can alter or abrogate it, unless some higher rule restrains or prohibits a change or repeal. *Supreme Lodge Knights of Pythias* v. *Knight*, 117 Ind., 489 (3 L. R. A., 409).

Corporations have only such powers as are specially given by their charters, or are necessary to carry into effect some specified power. The board of control of the endowment rank is an agency for ministerial purposes adopted by the supreme lodge, and, under the charter, must be governed by "such rules and regulations as to the supreme lodge might seem proper," and, as such agency, it is without authority to enact by-laws or to

prescribe rules and regulations that would be binding upon the members of the Knights of Pythias. *McIntyre* v. *Ingraham*, 35 Miss., 55; *Mobile & Ohio Railroad Co.* v. *Franks*, 41 Miss., 511. If it was the purpose of the supreme lodge to delegate lawmaking power, it is *ultra vires*. Beach on Priv. Corp., secs. 311, 421; *Supreme Lodge Knights of Pythias* v. *LaMalta*, 95 Tenn., 157 (30 L. R. A., 838); Thompson on Corp., secs. 955, 960. The board of mayor and aldermen cannot delegate their authority. *Macon* v. *Patty*, 57 Miss., 378 (34 Am. Rep., 451). An agent who is vested with power, as the supreme lodge in this case, must execute it. Bacon on Ben. Socs. & Life Ins., secs. 127, 132, 145, 148, 161.

The supreme lodge, a corporation, in entering into the contract, must specifically follow the mode prescribed for it in its charter, and Stein, as a member of the order, in entering into the contract, did so recognizing that all the provisions of the charter and all the provisions of the by-laws enacted by the supreme lodge within the terms prescribed by the charter, entered into the contract, and that no unauthorized act, though prescribed by the board of control without lawful authority, could have a baneful influence upon the contract that the supreme lodge had authorized to be made, and which he was willing to and did accept. *Supreme Lodge Knights of Pythias* v. *Knight*, 117 Ind., 496 (3 L. R. A., 409); Bacon on Ben. Socs. & Life Ins., sec. 161.

The supreme lodge, in the exercise of its lawful authority, had authorized the issuance of this certificate for $5,000, but it had never prescribed that the certificate should be avoided if Stein committed suicide, or died from the use of opiates, etc. These conditions to the application do not so enter into the contract as to be inseparable from it. 2 Kent's Com., 468. The application in this case, though not vicious, is, notwithstanding, vain, or idle or frivolous in so far as it is an effort on the part of the board to engraft an unauthorized condition in the certificate of insurance. *Cotten* v. *McKenzie*, 57 Miss., 418; *Car-*

*radine* v. *Wilson*, 61 Miss., 573; *Sanford* v. *Starling & S. Co.*, 69 Miss., 204.

If there are several considerations for separate and distinct contracts, and one is good and the other is bad, the one may stand and be enforced, although the other fail.   The invalidity of the one will not necessarily induce the destruction of the other.   2 Addison on Con., 762, and note.

*Mayes & Harris*, on same side.

This so-called by-law of the board of control was a nullity, and could not in any way impair or affect the rights of Stein and his wife, under the certificate.   *Supreme Lodge Knights of Pythias* v. *LaMalta*, 95 Tenn., 157 (30 L. R. A., 838).   In associations organized for benevolent purposes, courts will not construe their constitutions and by-laws so as to favor the forfeiture of the rights of the members or those dependent upon them.   Bacon on Ben. Socs. & Life Ins., sec. 86.

So far as these mutual benefit societies are concerned, the rights of the parties to the benefit of endowment are fixed, not so much by the terms of a written contract between them as by the constitution and by-laws.   Some of the authorities go a step further, and hold that the benefit certificate, or certificate of admission, is also a part of the contract between them. *Hellenberg* v. *District No. 1 of I. O. B. B.*, 94 N. Y., 580; *Schunck* v. *Geyenseitiger Wittwen und Waisen Fond*, 44 Wis., 375; *Splawn* v. *Chew*, 60 Texas, 535; *VanBibber* v. *VanBibber*, 82 Ky., 350; *Eastman* v. *Provident Mutual Relief Assn.* (N. H.), 20 Cont. L. J., 266; *Dolan* v. *Court Good Samaritan No. 5910, A. O. of F.*, 128 Mass., 437.

The law does not favor conditions subsequent.   *Gadberry* v. *Sheppard*, 27 Miss., 203; 4 Kent's Com., 129.   The party taking a contract under an unlawful condition subsequent takes it discharged of the condition, and acquires and holds a vested right.   1 Bl. Com., book 2, 154–157; 4 Kent's Com., 130; *Morley* v. *Rennoldson*, 2 Hare, 570; *Williams* v. *Cowden*, 13

Mo., 211 (53 Am. Dec., 143); *Merrill* v. *Emery*, 10 Pick., 507; *United States* v. *Arredondo*, 31 U. S. (6 Pet.), 691 (8 L. ed., 547); *Fremont* v. *United States*, 58 U. S. (17 How.), 560 (15 L. ed., 247); *United States* v. *Reading*, 59 U. S. (18 How.), 1 (15 L. ed., 291); *Blackstone Bank* v. *Davis*, 21 Pick., 42 (32 Am. Dec., 241); *Taylor* v. *Sutton*, 15 Ga., 103 (60 Am. Dec., 682); *Weathersby* v. *Weathersby*, 13 Smed. & M., 685; *Barksdale* v. *Elam*, 30 Miss., 694; *Cheairs* v. *Smith*, 37 Miss., 646.

The beneficiary in this policy acquired by the issuance of a benefit certificate a vested or contract right to receive the money upon certain conditions; and inasmuch as those conditions were to be performed after the delivery of the benefit certificate to the party assured, whereby the right vested, those conditions were conditions subsequent.     *Underhill* v. *Saratoga & W. R. Co.*, 20 Barb., 455; *Beck* v. *Montgomery*, 7 How. (Miss.), 39; *Haden* v. *Stoughton*, 5 Pick., 528; *Marwick* v. *Andrews*, 25 Me., 525.     This condition subsequent is unlawful, for the reason that, as between the knight on the one hand and the order— that is to say, the general order—on the other, the effect in this case is clearly violative of the constitutional principle which prohibits the impairment of the obligation of a contract. *Hoffmeyer* v. *Muench*, 59 Mo. App., 20.

The effort of the board of control to impose an additional burden as a condition upon his right (even if it be regarded as the effort of the supreme lodge itself) is void, because it is violative of the contract between himself and the order.     *Hale* v. *Equitable Aid Union*, 168 Pa., 377.`  The application and the certificate constituted the contract, and no element of the same can be disregarded.     *Knights Templar & M. Life Indemnity Co.* v. *Berry*, 4 U. S. App., 353 (50 Fed. Rep., 511); *Ætna Life Ins. Co.* v. *Florida*, 32 U. S. App., 753 (69 Fed. Rep., 932; 30 L. R. A., 87).

Argued orally by *T. A. McWillie*, for the appellant, and by *Edward Mayes*, for the appellee.

WHITFIELD, J., delivered the opinion of the court.

We held, in *Kramer* v. *Supreme Lodge*, at the last spring term of this court (no opinions filed), that the supreme lodge could not delegate to a subordinate managing committee—the board of control—the legislative power vested by the charter in the supreme lodge alone, approving *Supreme Lodge K. of P.* v. *LaMalta*, 95 Tenn., 157 (30 L. R. A., 838), in that regard, to which case we also refer for the history of the organization and development of the order of the Knights of Pythias. The anti-suicide clause in this case was adopted by the board of control, in Chicago, January 12 and 13, 1893; but it was never, before Stein's death, published in the official journal of the supreme lodge, or adopted, ratified or enacted by the supreme lodge. It follows that the regulation against suicide, if considered as a by-law, is void, because the board of control, a mere ministerial committee, vested with administrative functions in relation to the endowment rank, had no power to pass a law like this, fundamental in its character, providing a new condition avoiding absolutely the benefit certificate of one who should commit suicide.

But, assenting to this view, as already established by the two cases (*Kramer* v. *Supreme Lodge* and *Hughes* v. *Supreme Lodge*), it is insisted that, if the anti-suicide provision be void as a by-law, it is a valid element of a contract manifested by the application and the benefit certificate, and that, Stein having signed an application which bound him to the observance of all laws then in existence, or thereafter to be passed by the supreme lodge or the board of control, and this application containing this anti-suicide clause, he is bound by it, as an integral and inseparable element of an indivisible contract. To a proper understanding of the case in this view, it will be well to set out the facts of the case. In June, 1892, Stein, being then a Knight of Pythias, and as such knight entitled to insurance in the endowment rank, upon compliance with the provisions of the charter (act congress, May 5, 1870, as amended 1882),

and valid rules passed in accordance therewith, was admitted
to the endowment rank, and received a benefit certificate for
$3,000.    No anti-suicide clause was at that time in his applica-
tion, or known to the order.    The supreme lodge, at its seven-
teenth session, held in Kansas City, Missouri, August 23 to
September 3, 1892, adopted and promulgated the constitution
of the "Endowment Rank of the Knights of Pythias of the
World," under secs. 5 and 6 of article 2, of which constitution
this knight, Stein, was entitled to receive a benefit certificate
of $5,000 upon compliance with the provisions of the charter,
and valid regulations passed in pursuance of it.    No anti-suicide
provision was in that constitution adopted by the supreme
lodge, or even up to Stein's death, in August, 1893; but on
January 12 and 13, 1893, the board of control—a mere man-
aging committee, without authority—adopted such provision.
On January 20, 1893—seven or eight days only thereafter,
and when this provision had not been published, as required by
article 14 of the constitution of the supreme lodge itself—Stein
applied for the increased insurance, and signed the application
herein, and received the benefit certificate herein for $5,000,
surrendering his previous certificate for $3,000, the application
and certificate having been prepared in accordance with this
anti-suicide clause, adopted just seven or eight days before,
illegally; and thereafter, in August, 1893, Stein committed sui-
cide, the supreme lodge having never, up to that date, adopted
the anti-suicide provision.    These being the facts, the exact
question on this branch of the case for decision is: What was
the contract in this case?    "The conclusion," says Mr. Bacon
(vol. 1, Ben. Soc. & Life Ins., sec. 161), "from an examina-
tion of all the cases, is that the contract is found in the certifi-
cate, if one is issued, but is to be construed and governed by
the charter and by-laws of the society, and the statutes of the
state of the domicile of the corporation."    See, also, *Id.*, secs. 48,
91*a*.    The contracting parties here are Stein and the supreme
lodge, not the board of control; and, so far as the supreme

lodge is concerned, it had never assented to this anti-suicide clause up to the time of Stein's death.　It is essential to a contract that both parties shall agree to the same thing.　The case so much relied on by appellant—*McCoy* v. *Northwestern Mut. Relief Asso.*, 92 Wis., 577—is not in point.　The association is not the same, and in that case the anti-suicide provision was adopted by the association itself, in accordance with its charter, on January 15, 1890, McCoy having been actually notified twice before it was adopted, and not having died till some two years after its due adoption.　So *Daughtry* v. *Knights of Pythias*, 48 La. Ann., 1203, was a case where the by-law was conceded to have been validly enacted—" approved by the supreme lodge," says the court.　In *Hoffmeyer* v. *Muench* (1894), 59 Mo. App., 20, the charter of the order did not require the beneficiary to be one dependent upon the assured; but a local lodge of the order adopted a constitution, according to section 7 of which the beneficiary had to be one so dependent.　The court held that section 7 was void in that view, saying: " The contract is made with the corporation, and not with the subordinate lodge, and it is not for the subordinate lodge to say what contracts the corporation may make," citing Bacon's Ben. Soc. & Life Ins., sec. 144.

In *Knights Templar & M. Life Indemnity Co.* v. *Berry*, 4 U. S. App., 353 (1 C. C. A., 501; 50 Fed. Rep., 511), the policy contained this anti-suicide provision when signed by Berry, and was the only policy he ever had.　A statute of Missouri prohibited this defense, unless the assured contemplated suicide when he applied for the policy.　Berry committed suicide, and the defense was this clause, the company conceding, however, that it was bound to pay back the premiums.　The suit was on this policy, and the defense disallowed, as a by-law or as a contract.

It will be noticed that here not even the premiums are offered to be returned, and the forfeiture of the $3,000 as well as of the $5,000 is insisted on, although section 7 of article 2 of the

constitution of the endowment rank required premiums paid
to be refunded. To the same effect with the case just cited are
*Ætna L. Ins. Co.* v. *Florida*, 32 U. S. App., 753 (16 C. C.
A., 618; 69 Fed. Rep., 932; 30 L. R. A., 87), and *Hale* v.
*Equitable Aid Union*, 168 Pa., 377, in which the assured
agreed in his application to be bound by all rules and regula-
tions then existing or thereafter adopted by the union, and it
afterwards adopted a regulation changing the amount the bene-
ficiary was to receive from one-half to one-tenth of the amount.
Though adopted by the union itself, it was held that it would
not affect the policy issued before its adoption. See, generally,
1 Bacon, Ben. Soc. & Life Ins., *passim.* See, specially, *Id.*,
sec. 92, and *Wist* v. *Grand Lodge A. O. U. W.*, 22 Or., 271.

The charter is as much a part of this contract as if written
on its face. That charter prohibited any person but the supreme
lodge from passing this regulation against suicide. That char-
ter is the law of this contract, and the anti-suicide clause must
be regarded as written out of the contract by the charter.
The suits in the cases just cited were, just as here, on the policy
with this clause in them, and they, properly analyzed, are a
distinct holding that neither as a by-law nor as a contract can
this provision be upheld. What was validly agreed on in ac-
cordance with the charter, constitutes the contract in those cases
and in this. The objection that this view destroys the board of
control and the endowment rank is fanciful, not real. The board,
as an organization, remains. All the administrative functions
properly conferred on it remain. Our holding merely denies
it what the charter denied it—the power to pass laws, funda-
mental in their nature, governing the endowment rank, which
was vested by the charter in the supreme lodge alone. It is
easy for the supreme lodge to enact such provision, and when
validly enacted by it there can be no objection to its enforce-
ment. But it was clearly not in the power of this board of
control—a mere ministerial administrative committee—to usurp
to itself the legislative authority granted to the supreme lodge

as the sole source of such authority, and insert this provision illegally in this application, and force it upon Stein, already a knight, and a member of the endowment rank.

*Affirmed.*