CLARKE COUNTY COOPERATIVE (AAL) *v.* READ

No. 42270 April 2, 1962 139 So. 2d 639

*Billy E. Harris, A. J. Reese,* Quitman, for appellant.

*McFarland & McFarland,* Bay Springs, for appellee.

*Carter & Mitchell,* Jackson, amicus curiae.

McElroy, J.

This is an appeal from the Circuit Court of the First Judicial District of Jasper County, Mississippi. The action is on a promissory note given by the appellee, W. H. Read, to the appellant, Clarke County Cooperative (AAL). The Clarke County Cooperative, a domestic corporation organized and existing under the laws of the State of Mississippi, was incorporated under the Mississippi Agricultural Association Law (AAL) with its office and principal place of business in the City of Quitman, Mississippi. The Cooperative was engaged in the business of selling feed, fertilizer, seed, farm supplies and general merchandise.

W. H. Read bought farm supply items and signed a note on October 7, 1959, to cover an indebtedness of $4,281.35. The note was to mature in six months, April 7, 1960, and was to bear six per cent interest from October 7 and a reasonable attorney's fee. The appellee defaulted and although repeated demands were made

upon him, he paid no part of the note. Suit was filed December 10, 1960.

Appellee filed his answer which admitted the validity of the promissory note but denied that he was indebted to the appellant in the sum of $4,281.35. He admitted that he owed the sum of $1,114.08. A set-off was filed with his answer stating that the Clarke County Cooperative owed him "equities" for the years 1953-1958.

In the set-off, Read alleged there was a mutual indebtedness between the appellant and the appellee and that the Cooperative was indebted to him in the following amounts: Equities owing to Read by the Cooperative were $1,803.96. He alleged that in 1959 a rebate on poultry merchandise purchased was $526.18, plus interest. From May through October 1959, he lost 455 hens at $2 each for a total of $910. The total amount of the indebtedness to him from the Cooperative was $3,240.14. The total amount owed to appellant by appellee was $1,-114.08. Read swore to this set-off.

The appellant's answer to the set-off stated that "the said plaintiff is controlled and governed by laws of the Clarke County Cooperative". A sworn certified copy of the by-laws was attached as Exhibit A to the answer. There was shown, by virtue of Article 8 of said by-laws, a certified copy of the appellee's record of equities as recorded in the patron's record of equity book which was attached as Exhibit B to the answer. It denied owing the defendant-appellee anything.

It is well settled that equity credits allocated to a patron on the books of a cooperative do not reflect an indebtedness which is presently due and payable by the cooperative to such patron. Such equity credits represent patronage dividends which the board of directors of a cooperative, acting under statutory authority so to do, has elected to allocate to its patrons, not in cash or other medium of payment which would immediately take such funds out of the working capital of the co-

operative, but in such manner as to provide or retain capital for the cooperative and at the same time reflect the ownership interest of the patron in such retained capital. The interest will be paid to the patron at some unspecified later date to be determined by the board of directors of the cooperative. The word "capital" is intended to denote that capital which is of a nature comparable to the earned surplus of a conventional business corporation. The patron has no right to offset such equity credits, not being an indebtedness which is presently due and payable, against an indebtedness which is presently due and payable by him to the cooperative.

 ██ Kershaw v. Merchants Bank of New York, (1843) 7 How. 386, 393, said: "It is held to be a general rule that a plea of set-off should disclose such a state of facts as would entitle the party pleading it to sustain his action if he were plaintiff."

In Griffith's Mississippi Chancery Practice, Sec. 521, p. 583 (2d Ed. 1950), it was said: "The transactions must have been of such a nature that at the date of institution of the suit the defendant on his part could have instituted a good separate suit against the complainant for the item constituting the set-off."

See also Canal-Commercial Trust and Savings Bank v. Brewer, 143 Miss. 146, 108 So. 424; General Motors Acceptance Corp. v. Trull, 166 Miss. 490, 148 So. 390 and 80 C. J. S., Set-Off and Counterclaim, Sec. 25, p. 34.

The appellant is a cooperative organized and existing under the Agricultural Association Law of the State of Mississippi, Miss. Code 1942, Rec., Secs. 4475-4493. Section 4482 provides that the affairs of such a cooperative shall be managed and controlled by its board of directors. Section 4486 provides that such organizations are authorized and empowered to acquire and own properties, plants, and other facilities which may be necessary or useful in aiding the cooperative to serve its members. Section 4487 provides a means for such a co-

operative to obtain the necessary funds or capital to pay the expense of its operation and to acquire those facilities which are necessary or useful to the cooperative in rendering service to its members. That section provides as follows: "Such incorporated association may make charges to its members and deductions from the proceeds of their products for services rendered to them for the purpose of paying the expenses of operation and maintenance and development of such association, and for the creation and maintenance of reserves for the purpose of paying expenses, retiring obligations, acquiring, maintaining and operating property necessary or useful in carrying out the purposes of this act and for caring for contingencies, and such reserves may be used or distributed as may be deemed proper by the board of directors under the by-laws; and such corporation may make patronage dividends or distributions to its members and may do any and all things not unlawful in carrying out the purposes of this act, and shall have and enjoy all the rights, privileges and immunities of other corporations not inconsistent with this act."

The by-laws provide: "(2) Such dividends shall be paid either in cash or by credits allocated to the patrons in the Record of Patrons' Equities, or partly in accordance with each of said methods. 'Sec. 9. From time to time as cash may be on hand and available, not needed as an operating fund or for other necessary purposes of the association, the board of directors shall provide for a distribution to be made to the patrons for the purpose of retiring and paying equity credits as shown in the Record of Patrons' Equities. When such payment in cash is made, the oldest equity credits shall be first paid and retired.

" 'In any year in which the association may sustain a deficit from its operations, the directors shall have the right to apportion such loss against the accumulated patrons' equities in an equitable manner; and any such

application shall ratably reduce the face value of such equity credits, in the redemption thereof'.''

In Sovereign Camp Woodmen of the World v. Woodruff, 80 Miss. 546, 32 So. 4, this Court said: ''The constitution and laws of a benefit society are binding upon it and upon all its members and may be considered as written into contracts between it and its members . . .''

Again in Maas v. Sisters of Mercy of Vicksburg, 135 Miss. 505, 99 So. 468, this Court said: ''Clearly the constitution, by-laws and usages of the Sisters of Mercy constitute so far as they deal with their civil rights a binding contract between them. . .''

To the same effect are Newman v. Supreme Lodge Knights of Pythias, 110 Miss. 371, 70 So. 241; Supreme Lodge Knights of Pythias v. Stein, 75 Miss. 107, 21 So. 559; Sovereign Camp, Woodmen of the World v. Miller, 125 Miss. 502, 87 So. 892 and Butler v. Eminent Household of Columbian Woodmen, 116 Miss. 85, 76 So. 830. Compare 18 C. J. S., Sec. 181 at 591 and Fletcher, Cyclopedia Corporations, Permanent Edition, Vol. 8, Sec. 4198 at 753.

Dealing specifically with the binding effect of the by-laws of an agricultural cooperative upon the members of the cooperative is the case of Arkansas Cotton Growers Co-op Assn. v. Brown, 168 Ark. 504, 270 S. W. 946 where the court said: ''In fact, it is settled law that the by-laws of a corporation evidence the contract between it and its members of stockholders and govern the transaction between them.''

To the same effect is Washington Cooperative Egg and Poultry Association v. Taylor, 122 Wash. 466, 210 P. 806, and Young v. West Ark Production Credit Association (Arkansas 1953), 257 S. W. 2d 274.

A patron of a cooperative having by-laws such as appellant, is bound by such by-laws and cannot contend that when equity credits are allocated upon the

books of the cooperative that an indebtedness is thereby created which is immediately due and payable to him by the cooperative.

The record in the present case reflects that the appellant, in the exercise of its statutory and by-law rights so to do, had established reserves and thereby acquired the capital needed for its operations. This was done through means of the cooperative's crediting its annual "net savings" or profits to the record of patron's equities rather than paying such savings to the patrons in cash, for a cash payment would of course have depleted the funds which were available to the cooperative for the purpose of carrying on and developing its business.

Equity credits are in effect the capital of the cooperative and the revolving-fund plan or equity plan, as in Mississippi, for raising such capital is the most equitable means by which a cooperative can acquire its capital from its patrons. See Bowles v. Inland Empire Dairy Association (D. C. of N. D., 1943) 53 F. Supp. 210, 216, where the court said:

"Plaintiff contends that Defendant has no right to pay dividends out of its present earnings to those who, in past years, have furnished reserves by which defendant was capitalized. In this he challenges the revolving-fund plan of cooperative financing. 'The problem of how equitably to capitalize a cooperative so that the capital furnished by a particular member will bear a direct relation to his patronage and ultimately will be returned to him is believed by many competent cooperative leaders to be solved best through the use of the revolving-fund plan of financing.' 'Legal Phases of Cooperative Association,' Hulbert, F. C. A. Bulletin No. 50, May, 1942, p. 276. See also, Sanders, 'Retains That Nobody Feels,' 3 News for Farmer Cooperatives 5-6, Farm Credit Administration, 1936; Sanders, 'Organizing a Farmer's Cooperative,' Farm Credit Adminis-

tration Cir. C-108, 42 pp., 1939. Plaintiff complains that defendant waited so long to retire these revolving-fund obligations. The reason for this is explained by Hulbert ('Legal Phases of Cooperative Associations', p. 276) as follows: 'The derivation of the name revolving-fund plan becomes more apparent when an association reaches the stage where the oldest investment of the patrons of previous years may be retired. It is only when an association reaches this stage that its revolving-fund begins to revolve. Accumulations or retains for capital purposes, under this plan of financing, should be at least recorded on the books of the association as credits in favor of the proper persons. (This is what the Defendant did.) The revolving-fund plan of financing is believed to be the most practicable way of insuring that ultimately all the major contributions of patrons to the assets of an association may be returned to them. The fairness of the plan should make it easier for an association to obtain members and to build up an adequate capital. It provides a means by which the capital of an association increases as its volume of business increases. Many of the most successful agricultural cooperatives use this method of financing. It is being adopted not only by new associations but by associations which have been operating for many years.' The validity of the revolving-fund plan of financing has been specifically recognized by the Courts. Reinert v. California Almond Growers Exchange, 9 Cal. 2d 181, 70 P. 2d 190; Adams v. Sanford Growers' Credit Corporation, 135 Fla. 513, 186 So. 239; Ozona Citrus Growers Association v. McLean, 122 Fla. 188, 165 So. 625; Proodian v. Plymouth Citrus Growers Association, 143 Fla. 788, 197 So. 540; Parker v. Dairymen's League Cooperative Association, Inc., 222 App. Div. 341, 226 N. Y. S. 226; Loomis Fruit Growers' Association v. California Fruit Exchange, 128 Cal. App. 265, 16 P. 2d 1040.''

See Reinert v. California Almond Growers Exchange, Inc., (Calif. 1936), 63 P. 2d 1114; Driscoll v. East-West Dairymen's Association, (Calif. 1942), 122 P. 2d 379; Lewiston Cooperative Society No. 1 v. Thorpe, 91 Maine 64, 39 A. 283 and In the Matter of F. L. F. Farmers Cooperative Association, Inc. (D. C. of N. J. 1958) 170 F. Supp. 497.

 ■ We are of the opinion that equity credits are not an indebtedness of a cooperative which is presently due and payable. Therefore they cannot be used as a set-off against the note.

 ■ Appellee claimed a rebate on poultry merchandise purchased in the sum of $526.18, plus interest. He alleged that Mr. Sam Early, deceased, while manager of the Cooperative, orally promised him five per cent rebate on poultry merchandise. Appellee's testimony was to the effect that in the beginning he had a written contract which was a joint agreement with the Egg Finance and Marketing of the Mississippi Federated Cooperative, Jackson, Mississippi, and that the Clarke County Cooperative was a partner to the contract. There was no proof that in this written contract the appellee was offered a five per cent rebate. In Young v. Weststark Production Credit Association, 257 S. W. 2d 274, it was held that an agricultural credit association created under the reformed credit act was not bound by any oral promises of its officials, since such matters involved questions of judgment and discretion and parol evidence was then inadmissible to vary terms of the written contract. We hold that the only credits to which he was entitled were those given by the cooperative and entered in its books. No monies were due unless authorized by the board of directors.

The appellee claims a set-off through May and October of 1959 for 455 hens lost at $2 each. The testimony as to this claim is indefinite and uncertain.

It is to be noted from the record that on October 7, 1959, Read refinanced his account by signing the note in question with the Clarke County Cooperative and that his contract in reference to the chicken business was in part with the Egg Finance and Marketing of the Mississippi Federated Cooperative, Jackson, Mississippi.

█ █ This question was recently decided in Denton Manufacturing Co., Inc. v. A. A. Henderson, 242 Miss. 755, 137 So. 2d 196. The appellee based his claim on the fact that the appellant had at one time paid him $2 for grown hens and the fact that the cooperative had promised to provide technical assistance to the producer in carrying out the enterprise through means of field service. There was no proof that the cooperative failed to render this service. It is clear to us that the appellee failed to meet his burden of showing that the death of the chickens was caused by any failure to provide technical assistance to the producer through means of field service. The claim should have been disallowed.

The case is reversed and judgment is rendered here in behalf of the appellant for $4,281.35, the amount of the note, plus six per cent interest from the date of the note, October 7, 1959, to date. Fifteen per cent of said amount is allowed as a reasonable attorney's fee.

Reversed and judgment here for appellant.

*Kyle, Ethridge, Rodgers,* and *Jones, JJ.,* concur.