B. ROSENBERG AND SONS, INC. and
all others similarly situated

v.

ST. JAMES SUGAR COOPERATIVE,
INC., et al.

Civ. A. No. 75–2863.

United States District Court,
E. D. Louisiana.

April 22, 1976.

## ORDER

MITCHELL, District Judge.

The Court, after carefully considering the motion of defendants for summary judgment, the record, the law applicable to the case, and the Magistrate's Report and Recommendation, hereby approves the Magistrate's Report and Recommendation and adopts it as its opinion herein.

Accordingly, the motion of defendants for summary judgment is GRANTED.

## REPORT AND RECOMMENDATION

SEAR, Magistrate.

This matter came before the Court on a former date for hearing on the motion of defendants for summary judgment.

This is an action to recover damages for alleged violations of the fraud provisions of the Securities Act of 1933, 15 U.S.C. § 77a, et seq., and the Securities Exchange Act of 1934, 15 U.S.C. § 78j and 17 C.F.R. 10b–5. The initial question involved is whether a share of common stock in a sugar cooperative is a security within the Acts. Since diversity jurisdiction is absent, a negative finding divests this Court of jurisdiction.

Defendant St. James Sugar Cooperative, Inc., is a Louisiana cooperative marketing association. Defendants F. A. Graugnard, Jr., Albert Waguespack, Robert Zeringue, Cyril Waguespack, Fernand Falgaust, Jr., Hermann Falgaust, Felician Schexnayder, Edgard Schexnayder and Harry Brazen are

all members of the board of directors of the Co-op.

The St. James Sugar Co-op was formed in 1945 pursuant to Act 57 of the Louisiana Legislature of 1922 to provide processing capacity that did not exist in the St. James Parish area, to assist farmers in marketing their sugar cane and to obtain for its farmer members favorable prices for supplies and equipment. To become a member of the association, each farmer must purchase one share of common stock, which is non-negotiable, bears no dividends and entitles each member to one vote; but rights thereunder are suspended by failing to patronize the association for two consecutive years.

Under the By-Laws of the Co-op, equity credits resulting from net income of the association—after payment of debts, losses, expenses and other obligations—are allocated to members' accounts on the basis of patronage. This fund is used as capital by the association and is not paid to individual members unless the board of directors, in its discretion, declares a cash distribution after written approval by the New Orleans Bank for Cooperatives.

There are no provisions in the Articles of Incorporation or the By-Laws to pay equity credits at the time a member withdraws from the Co-op or dies. If a cash distribution of equity credits for a particular year is voted and approved, the funds are distributed among all those who were members in the year that the credits accrued, regardless of whether they are members at the time of the distribution.

In 1952, plaintiff B. Rosenberg and Sons, Inc., then known as Golden Star Planting and Manufacturing Company, became a member of the defendant cooperative by purchasing one share of stock and entering into a marketing agreement. While plaintiff was a member, it actively engaged in the affairs of the association by participating in meetings, voting for plant expansion and accruing a substantial amount in equity credits.

Plaintiff discontinued farming in 1966. After failing to patronize the Co-op for over two consecutive years, in accordance with the By-Laws, plaintiff was requested and did terminate its membership by reselling its one share to the association for $100.00—the purchase price of the stock. At that time plaintiff had accrued over $43,000.00 in credits, and no mention was made as to when they would be forthcoming.

Plaintiff filed this complaint to recover damages claiming that the association induced it to resell its share of stock without disclosing to plaintiff material facts that reasonably could have been expected to influence plaintiff's decision to sell. Specifically, defendants allegedly omitted to inform plaintiff that accrued equity credits, as a cash distribution, would not be forthcoming within a reasonable time thereafter.

Defendants maintain that shares of stock in a non-profit sugar cooperative are not "securities" within the meaning of the Acts. The term "security" is defined as any stock or participation in any profit-sharing agreement or investment contract.[1] I find that the stock involved here is not a security within the meaning of the federal securities laws.

In searching for the scope of the word "security", name or form should be disregarded, and the emphasis placed on economic reality.[2] The stock certificate here denotes nothing more than membership in the cooperative. It has none of the characteristics associated with the concept of a security. It is non-negotiable, bears no dividends, can only be owned by a member and can only be transferred with approval of the board of directors.

Nor do I find a share of stock in St. James an "investment contract" as contem-

1. 15 U.S.C. § 77b(1); 15 U.S.C. § 78c(a); *Tcherepnin v. Knight*, 1967, 389 U.S. 332, 88 S.Ct. 548, 19 L.Ed.2d 564; *S.E.C. v. Howey*, 1946, 328 U.S. 293, 66 S.Ct. 1100, 90 L.Ed. 1244.

2. *United Housing Foundation v. Forman*, 1975, 421 U.S. 837, 95 S.Ct. 2051, 44 L.Ed.2d 621; *McClure v. First National Bank of Lubbock*, 5 Cir. 1974, 497 F.2d 490, cert. denied, 420 U.S. 930, 95 S.Ct. 1132, 43 L.Ed.2d 402.

**4**

plated by the Acts. The proper test in this regard is whether the stock reflects an investment of money in a common enterprise with profits to come solely from the efforts of others.[3] The term "profits" means a participation in earnings resulting from the use of the investors' funds.[4] The distinguishing feature of a security transaction is that the investor is motivated solely by the prospects of a return on his investment from the efforts of third persons.[5] However, when a purchaser is motivated by a desire to use what he has purchased, the securities laws do not apply.[6]

■ Equity credits or patronage dividends are not profits similar to income from ordinary stock investments but are rebates or refunds to members based solely on patronage and not on the amount of money invested in the stock.[7] A member accrues no equity credits if he produces no cane or if the association sustains a loss.[8]

The fundamental characteristics [sic] of an agricultural cooperative is that it is operated for the mutual benefit of its members as producers—not as stockholders. Advantages which accrue to a member of a cooperative accrue primarily because of his patronage with the association and not because of any financial investment he may have made therein.[9]

It is readily apparent that local sugar cane farmers purchasing shares of stock in the defendant cooperative did not believe that they were purchasing investment securities. The inducement to purchase was membership in an association that would provide the sugar cane farmer with services he might not otherwise obtain—that is, the assurance of a place to process and market the fruits of his labor. The cooperative member did not participate for the purpose of obtaining profits from investment securities.

■ Even if the stock involved were a security, plaintiff would have no valid claim under the 1933 Act. Both 15 U.S.C. §§ 77*l* and 77q provide civil liability only against persons who sell a security by omitting to state a material fact. Thus this Act only reaches the fraudulent conduct of sellers and not the fraudulent conduct of buyers.[10]

■ Although the civil liability provisions of the Securities Exchange Act of 1934 apply to the fraudulent conduct of purchasers as well as sellers,[11] plaintiff's claim is prescribed.

Since there is no federal statute of limitations applying to the 1934 Act, one must look to state law.[12] Under Louisiana law, the prescriptive period was two years from

**3.** S.E.C. v. Howey, supra.

**4.** Id.

**5.** Id.

**6.** Tcherepnin v. Knight, supra; United Housing v. Forman, supra.

**7.** See Cooperatives—Rights in Dividends, 50 A.L.R.3rd 440; Henderson, Cooperative Marketing Associations, 23 Columbia Law Review 91.

**8.** Whether equity credits are a debt due and owing to a former member which gives him a right to compel payment of his equity credits upon withdrawing from membership is a question for state courts. See Clarke County Cooperative v. Reed, 1962, 243 Miss. 879, 139 So.2d 639; Driscoll v. East-West Dairymen's Assn., Cal.App.1942, 122 P.2d 379; Placerville Fruit Growers Assn. v. Irving, 1955, 135 Cal.App.2d 731, 287 P.2d 793; Claassen v. Farmers Grain Cooperative, 1971, 208 Kan. 129, 490 P.2d 376.

**9.** Co-operative Grain and Supply Co. v. C.I.R., 8 Cir. 1969, 407 F.2d 1158, 1163.

**10.** Greater Iowa Corp. v. McLendon, 8 Cir. 1967, 378 F.2d 783; Schoenbaum v. Firstbrook, D.C.N.Y.1967, 268 F.Supp. 385, aff'd, 2 Cir., 405 F.2d 200, cert. denied, 395 U.S. 906, 89 S.Ct. 1747, 23 L.Ed.2d 219; Duffy v. Ranger Securities Corp., E.D.N.Y.1972, 346 F.Supp. 1401; Crowell v. Pittsburgh & L.E.R. Co., E.D. Pa.1974, 373 F.Supp. 1303, 1311.

**11.** 15 U.S.C. § 78j; 17 C.F.R. 10b–5; Cochran v. Channing Corp., S.D.N.Y.1962, 211 F.Supp. 239.

**12.** Berry Petroleum Co. v. Adams & Peck, 2 Cir. 1975, 518 F.2d 402; Hudak v. Economic Research Analysts, Inc., 5 Cir. 1974, 499 F.2d 996, cert. denied, 419 U.S. 1122, 95 S.Ct. 805, 42 L.Ed.2d 821.

either the date of sale [13] or the date on which plaintiff discovered or should have discovered the misrepresentation or omission of a material fact.[14] Plaintiff sold his stock on May 6, 1968, and filed suit on September 10, 1975.

Plaintiff contends he did not discover the alleged fraud until November of 1974. The evidence reflects that Nat Rosenberg, the current president of the plaintiff corporation, was an active, participating member of the Co-op since 1952 [15]—attending meetings, voting for plant expansion and presumably having knowledge of the Co-op's Articles of Incorporation, By-Laws and the amendments thereto. In view of the foregoing, as well as through letters received by plaintiff from the Co-op, plaintiff knew or should have known at least by April of 1972 [16] and perhaps as far back as 1959 [17] that equity credits were restricted as to payments, had no market value and were not distributed as cash upon the death of a member or upon the sale of a member's share of stock. Furthermore, it is noted that a person has no duty under the 1934 Act to disclose to another information which is equally available to both.[18]

### Recommendation

Accordingly, I recommend that the motion of defendants for summary judgment be GRANTED.

---

13. La. R.S. 51:715.

14. *Sargent v. Genesco, Inc.*, 5 Cir. 1974, 492 F.2d 750; *Cowsar v. Regional Recreations*, M.D.La.1974, 65 F.R.D. 394.

15. See Exhibit D–8.

16. See Exhibits D–33, –34 and –35.

17. See Exhibits D–10, –11, –12 and –13.

18. *Myzel v. Fields*, 8 Cir. 1965, 386 F.2d 718; *Kohler v. Kohler Co.*, 7 Cir. 1963, 319 F.2d 634. See *City Nat'l Bank of Fort Smith v. Vanderboom*, 8 Cir. 1970, 422 F.2d 221.