RYDER, Judge.
This is an appeal from a final summary judgment entered in favor of appellee in a declaratory judgment action. The judgment of which appellants complain approved the method by which appellee plans to convert from a nonprofit agricultural cooperative marketing association, formed pursuant to chapter 618, to a chapter 607 for-profit corporation. The issue we must resolve is whether the trial court was correct in its determination that the cooperative could, as part of the conversion, distribute its retained earnings to its members on the basis of their past patronage rather than in accordance with their current shareholdings in the cooperative. We affirm the trial court’s order.
Appellee, Growers Fertilizer Cooperative (Growers), was formed in 1934. Like other agricultural cooperative marketing associations, Growers was organized for the mutual benefit of its members as producers of agricultural products. While cooperative associations are not required to issue capital stock to their members, Growers chose to do so and its members are also shareholders. Growers sells fertilizer products to its patrons, some of whom are members and some of whom are nonmembers. Members are not required to purchase products from the cooperative and, in fact, some of Growers’ members are not patrons.
Over the years, Growers has kept an account on its books referred to as “Net Profit Transferred to Retained Earnings.” This account represents Growers’ annual net profit, after deducting operating expenses, losses, patron discounts and patron refunds. Growers’ bylaws authorize the payment of patron refunds to member/patrons in cash or “revolving fund certificates,” which are payable to holders on the occurrence of designated events, such as merger, dissolution, liquidation, asset sale, or majority vote of the board of directors. Growers paid a patron refund in the form of revolving fund certificates in 1956, but until recently it has paid all subsequent patronage refunds in cash. Patron refunds are paid only to members, in proportion to their patronage of the cooperative, and are derived solely from earnings attributable to sales to members. Growers’ bylaws do not address the disposition of net income attributable to nonmember business. This nonmember net income constitutes the net profit transferred to retained earnings.
In February 1986, Growers decided, by a majority vote of its shareholders, to convert to a for-profit corporation. The original conversion plan, which later was amended, called for a two-tiered distribution of stock in the new for-profit corporation to current Growers’ shareholders. The first tier was a share-for-share swap of new for old stock. The second tier involved the distribution of 5,000 shares in the new corporation to members in proportion to their patronage of the cooperative over a ten-year period ending June 30, 1985.
In April 1986, appellants filed their declaratory judgment action in the lower court. Appellants, Ruth R. Shinn, individually, Ruth R. Shinn and Carolyn Thompson, as co-trustees under the testamentary trust established under the Last Will and Testament of Charles M. Shinn, a/k/a the Charles Shinn Trust, and Peace Creek Properties (the Shinns), collectively own about 13.7% of the cooperative’s outstanding shares. Despite their sizeable share *1185 holdings, the Shinns have not participated in the cooperative as have other patrons. As a result, Growers’ planned distribution would result in the dilution of the Shinns’ proportionate shareholdings in the cooperative to less than 1%. The Shinns complained that the second tier distribution violates Florida law and Growers’ articles of incorporation and bylaws, since it would result in the distribution of a portion of Growers’ retained earnings in the form of equity in the new corporation on the basis of past member patronage. The Shinns asked the court to declare that Growers must distribute its retained earnings to shareholders in proportion to the number of shares the stockholders currently hold. After filing their pleadings, both parties moved for summary judgment. Judge Davis granted Growers’ motion, reasoning that section 618.15(3), Florida Statutes (1987), requires that any distribution of reserves and surpluses be made to members on the basis of patronage.
The Shinns timely appealed and their initial brief raises two issues. The first issue challenges the validity of Growers’ plan to distribute its retained earnings on the basis of patronage. The second addresses the dilution of the Shinns’ interest in the cooperative resulting from the second tier distribution of stock in the new corporation. After the initial brief was filed, however, Growers rescinded the 1986 conversion plan (plan I) and adopted a new plan (plan II), which replaces the second tier distribution of stock with a distribution of revolving fund certificates. The certificates will pay out Growers’ retained earnings to its members on the occurrence of designated events based on each members’ patronage of the cooperative since its inception. Growers moved to dismiss, strike or remand on the grounds that plan II renders the appeal moot. We temporarily relinquished jurisdiction to the lower court for a determination of mootness. Judge Susan Wadsworth Roberts, who had taken over the case, found that issue two had been rendered moot, since plan II avoids the dilution of the Shinns’ interest in Growers by distributing revolving fund certificates instead of stock in the new corporation. The court ruled, however, that the first issue is still viable because plan II, like plan I, will result in the distribution of retained earnings to members based on their past patronage of the cooperative.
This appeal, therefore, proceeds on the first issue only. During oral argument, the parties disagreed on which plan is before this court. The Shinns maintain that Judge Davis’ order ruled on the validity of plan I and therefore our review is limited to consideration of the provisions contained in that plan. Growers argues that we cannot review a nonexistent plan and must therefore consider the provisions of plan II in accordance with Judge Robert’s order regarding mootness, which finds that this appeal is still viable under the provisions of plan II. We agree with Growers and will proceed to review plan II. Our inquiry, however, is limited to the question of whether Growers can distribute its retained earnings, in connection with its plan II conversion, to its members on the basis of their past patronage of the cooperative.
The capital structure of cooperative associations differs from that of conventional for-profit corporations. Corporations formed pursuant to chapter 607, Florida Statutes, exist for the purpose of making a profit for their shareholders. Shareholders invest in these corporations by purchasing capital stock and they generally receive a return on their investment in the form of dividends paid in proportion to the number of shares they hold. Cooperative associations, on the other hand, are run for the mutual benefit of their member/patrons and not for the purpose of making a profit. Lambert v. Fisherman’s Dock Cooperative, 280 A.2d 193, 197 (N.J.Super.Ct.App. Div.1971); Mooney v. Farmers’Mercantile & Elevator Co. of Madison, 138 Minn. 199, 164 N.W. 804, 805 (1917). See Annot., 50 A.L.R.3d 435, 442 (1973). See also § 618.01(3), (4), Fla.Stat. (1987). Ordinarily, a cooperative distributes its net profit to its member/patrons on the basis of their patronage during the period the profit was earned. Lambert. See 18 Am.Jur.2d Cooperative Associations § 22 (1985); 50 A.L.R.3d 442. A member’s entitlement to *1186 a portion of the cooperative’s net profit generally depends on the amount of the member’s patronage rather than the number of shares the member holds. Lambert; Mooney. See 50 A.L.R.3d 443, 456-459.
Accordingly, various provisions of chapter 618, Florida Statutes, are intended to ensure that agricultural cooperative marketing associations exist to benefit their members rather than to make a profit for investors. See § 618.01(3), (4), Fla.Stat. (1987). Pursuant to sections 618.01(3) and 618.15(3), members may receive no more than an 8% per annum return on their stock or membership capital. Section 618.01(3) also limits the amount of revenue cooperatives may earn from nonmembers to no more than 50% of their total revenue. More relevant to the issue presented for our review, however, are the provisions of section 618.15(3) concerning the distribution of earnings on the basis of patronage:
The association by the vote of its directors, may establish and accumulate reserves out of earnings, including a permanent surplus fund as an addition to capital. Net income in excess of additions to reserves and surpluses so established shall be distributed to the members of the association on the basis of patronage. Any distribution of reserves and surpluses at any time shall be made to members at the time such distribution is ordered on the basis of patronage.
§ 618.15(3), Fla.Stat. (1987).
In this case, Growers did exactly what was required of it under section 618.15(3). It transferred a portion of its profit into a “retained earnings” account, which in our opinion is the equivalent of establishing “reserves” or “surpluses.” Then, prior to its conversion to a for-profit corporation, it distributed revolving fund certificates evidencing its members’ rights to share in future distributions of Growers’ retained earnings on the basis of their patronage. Revolving fund certificates, sometimes referred to as “equity credits,” represent patronage refunds allocated by the cooperative to its member/patrons, not in cash .or other medium of payment which would immediately take such funds out of its working capital, but in such manner as to provide or retain capital for the cooperative and at the same time reflect the ownership interest of the member/patrons in such retained capital. Schmeckpeper v. Panhandle Cooperative Association, 180 Neb. 352, 143 N.W.2d 113, 120 (1966); Clarke County Cooperative v. Read, 243 Miss. 879, 139 So.2d 639, 641 (1962). See 18 Am.Jur.2d Cooperative Associations § 23; 50 A.L. R.3d 443. Equity credits are, in effect, the capital of a cooperative association, comparable to the earned surplus of a for-profit corporation. Schmeckpeper, 143 N.W.2d at 119; Clarke, 139 So.2d at 641. In our view, the distribution of revolving fund certificates satisfies the requirement of section 618.15(3) that “[a]ny distribution of reserves and surpluses at any time ... be made to members ... on the basis of patronage.”
We reject the Shinns’ interpretation of section 618.15(3), according to which the “permanent surplus fund as an addition to capital” is separate from the “reserves and surpluses” required to be distributed on the basis of patronage. A permanent addition to capital, the Shinns argue, constitutes shareholders’ equity in the cooperative which must be distributed on the basis of their proportionate stock ownership. The Shinns evidently do not understand that the “equity” of a cooperative association differs from that of a conventional for-profit corporation in that it is shared by members on the basis of patronage rather than the number of shares held. See Lambert; Mooney. In addition, section 618.-15(3) clearly indicates that the “permanent surplus fund” is a sub-category of “reserves out of earnings” by the use of the word “including.” We will not ascribe to the Shinns’ strained interpretation of section 618.15(3), since the statute clearly and unambiguously expresses a legislative intent consistent with the nature and purpose of cooperative associations. See Schmeck-peper.
The Shinns also argue that since Growers’ retained earnings account consists of net profit derived from nonmember business, the cooperative cannot distribute the funds contained therein to members. They *1187 cite federal income tax cases decided by federal courts which distinguish a cooperative’s earnings attributable to sales to members, which generally are taxable to the patrons, from its earnings attributable to sales to nonmembers, which are taxable to the cooperative. See Iberia Sugar Cooperative, Inc. v. United States, 480 F.2d 548 (5th Cir.1973); United States v. Mississippi Chemical Co., 326 F.2d 569 (5th Cir. 1964). These cases reason that earnings attributable to sales to members should be excluded from the cooperative’s gross income when these earnings will return to the patrons in the form of a rebate.
We do not agree with the Shinns that the distinction between earnings from member business and those from nonmember business is viable for our purposes in this case. Section 618.15(3) makes no such distinction, stating only that earnings which become reserves or surpluses are to be distributed to members on the basis of patronage. This is in keeping with the purpose of cooperative associations formed under chapter 618 to benefit their member/patrons rather than their patrons generally. See § 618.01(3), (4), Fla.Stat. (1987). Contrary to the Shinns’ suggestion, distributions of earnings derived from nonmember business to members cannot result in a windfall profit to members, because section 618.01(3) limits the amount of business the cooperative can do with nonmembers. In addition, members who are not also patrons of the cooperative, unlike their counterparts in for-profit corporations, ordinarily derive no benefit from nonmember business.
Further, the tax cases cited by the Shinns are inapposite. They purport only to distinguish gross income of the patrons from that of the cooperative by separating, for tax accounting purposes, funds which flow into the cooperative from nonmember business from funds which the cooperative must return to patrons in the form of a rebate. The distinction is useful in determining which party is deemed to receive the economic benefit of the income under our internal revenue laws but it does not determine entitlement to the funds for state law purposes.
We conclude that Growers’ plan to distribute its retained earnings in the form of revolving fund certificates is consistent with the requirements of section 618.15(3) and comports with the underlying purpose of cooperative associations to benefit their member/patrons. The Shinns are mistaken in their belief that their paid-in capital entitles them to a pro rata share in Growers’ net profit. Cooperatives differ from for-profit corporations in that their retained earnings benefit members in proportion to their patronage, not their shareholdings. Accordingly, we affirm the trial court’s determination that Growers could distribute its retained earnings on the basis of patronage.
AFFIRMED.
CAMPBELL, C.J., and SCHOONOVER, J., concur.