Regina ARRIZZA, et al.

v.

JEFFERSON GUARANTY BANK, et al.

Civ. A. Nos. 86–4253, 86–4254, 88–0031, 88–0032, and 88–2402.

United States District Court,
E.D. Louisiana.

Sept. 9, 1988.

Brock, Moral, Cassibry, Fraiche & Pizza, Kenneth A. Goodwin, Trial Atty., Michael R. Mangham, William T. Carlson, Jr., Julie P. Silbert, New Orleans, La., for plaintiff.

Friend, Wilson & Draper, Joseph E. Friend, Diana L. Rachel, New Orleans, La., for South Sav. and Loan Ass'n.

Jones, Walker, Waechter, Poitevent, Carrere & Denegre, Herschel L. Abbott, Jr., Trial Atty., Robert B. Bieck, Jr., Pauline F. Hardin, Denise Redmann Krouse, New Orleans, La., for Jefferson Bancshares, Inc., Jefferson Guar. Bank, Robert L. Pettit, Jr., Paul E. Skretny, Sherwood G. Briggs, John T. Trotter, John Sandidge, Jr., N. Buckner Barley, Jr., Joseph G. Boudreaux, A. Vernon Brinson, William R. Burk, Jr., Doyle Coatney, Richard L. Crowell, Jr., Joseph C. Domino, Charles J. Egan, Jr., Harry M. England.

## ORDER AND REASONS

CHARLES SCHWARTZ, Jr., District Judge.

Civil Action No. 86–4254 is before the Court on defendants' motion for summary judgment. For the following reasons, the Court now GRANTS the motion.

This is a securities case. Plaintiffs, Charles L. Romano and Joseph V. Brocato, allege that defendants, Jefferson Guaranty Bank ("JGB") and its parent Jefferson Bancshares, Inc. ("Bancshares"), violated the Securities Act of 1933, 15 U.S.C. §§ 77a–77aa; the Securities Exchange Act of 1934, 15 U.S.C. §§ 78a–78kk; and numerous related Louisiana state laws.

Having labored over the voluminous documents both sides have submitted on the motion, the Court has discovered a fatal flaw in plaintiffs' position. On the one hand, they allege that they were deceived by the "Executive Five"; on the other hand, it appears that they were two of members of this "Executive Five." Such self-contradictory allegations cannot survive. For this reason, among others, the Court must dismiss their claims.

Defendants raise the following issues: (1) plaintiffs state no cause of action under the 1933 Act because § 3(a)(2) of the Act exempts securities issued by a bank; (2) plaintiffs' claims under § 12(2) of the 1933 Act and under § 29 of 1934 Act are barred by the three-year statutes of repose; (3) the alleged purchase contracts are not securities separate from the Colonial bank stock; (4) plaintiffs state no cause of action under either the 1933 Act or the 1934 Act inasmuch as they do not properly allege a material misrepresentation; (5) plaintiffs' claims are barred under the equitable doctrine of *in pari delicto;* and (6) plaintiffs' related state law claims fail for same reasons as the federal claims do in grounds (4) and (5). Because the Court finds ground (4) to be meritorious, the Court pretermits ruling on the remaining separate grounds.

### I. *Background*

Plaintiffs allege that JGB and its parent holding company, Bancshares, through a group of five JGB officers known as the

"Executive Five" devised a scheme to induce plaintiffs and others to purchase the controlling stock of Colonial Bank so that, upon passage of a statewide multi-parish banking statute, Bancshares could acquire Colonial Bank. Among the members of the Executive Five were the two plaintiffs; Brocato was President and a director of JGB, while Romano was Executive Vice President of JGB.

In 1983, a group known as the Beebe Group owned the controlling stock interest in Colonial Bank, an Orleans Parish federally insured bank. The Executive Five made a deal with the Beebe Group to take over their controlling interest for sale to other investors, mostly JGB customers and employees, by means of an Offering Circular; to finance his purchase, an investor would sign promissory notes and collateral pledge agreement for the amount of his stock purchase. Some time later, the value of Colonial Stock declined, and plaintiffs sued.

Central to plaintiffs' claims are nine allegations of misrepresentation/omission of material fact by defendants, whom plaintiffs allege were "substantial participants" along with the Executive Five.

(a) There was an inadequate disclosure concerning Colonial Bank's regulatory difficulties, operational problems, and loss capital ratio;

(b) There was no disclosure concerning the risks attendant to the ownership of bank stocks in general and the ownership of Colonial Bank stock in particular;

(c) There was no disclosure concerning the possibility that the value of Colonial Bank stock could decline;

(d) There was no disclosure concerning the risk that defendants would be unable or unwilling to purchase the Colonial Bank shares, as promised, if Multi-Parish Banking was not enacted in Louisiana;

(e) There was no disclosure concerning the risk that defendants would be unable to purchase the Colonial Bank shares, as promised, if federal or state banking regulators would not approve such purchase;

(f) There was no disclosure concerning the risk that a subsequent holder in due course of the promissory notes and pledge agreements could enforce payment of the promissory notes despite defendants' representations that no payment of the promissory notes would ever be necessary;

(g) There was no disclosure concerning the risk that defendants would enforce payment of the promissory notes if defendants were unable or unwilling to purchase the Colonial shares, as promised;

(h) Defendants affirmatively misrepresented to plaintiffs that no payments of principal or interest on the promissory notes would ever be required; and

(i) The true book value of the Colonial Bank shares was misrepresented in the Offering Circular.

As explained below, none of these allegations is supported by any admissible evidence in the record. Thus, summary judgment is appropriate against plaintiffs.

## II. *Securities Claims*

As a prelude applicable to most of plaintiffs' arguments as to material misrepresentations/omissions, the Court repeats the Supreme Court's recent enunciation concerning summary judgment motions on far-fetched claims. "If the factual context of a case renders the [plaintiffs'] claim implausible—if the claim is one that simply makes no economic sense—[the plaintiffs] must come forward with more persuasive evidence to support their claim than would otherwise be necessary." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). The Court's task at this point is a narrow one: has either plaintiff produced any *genuine* dispute of *material* fact as to any of the nine alleged misrepresentations/omissions? As explained below, the answer is no.

Concerning allegations (a)–(e) and (i), plaintiffs' briefs are silent and plaintiffs

present no evidence of any kind in opposition to defendants' arguments thereto. As to these allegations, the Court must presume that plaintiffs have no opposition to defendants' position. In any event, by producing no opposing, admissible evidence, plaintiffs have failed to meet their burden of proof necessary to defeat summary judgment on these allegations. *E.g., James v. Nico Energy Corp.*, 838 F.2d 1365 (5th Cir.1988). Further, as addressed below, the Court finds defendants' position as to each of these allegations well-supported by deposition evidence and/or case law authority.

■ *Allegation (a):* Both Brocato and Romano admit that they were aware, at least to some degree, that Colonial Bank was in financial difficulty. *E.g.,* Defendants' Reply Memorandum, Exhs. D–E (Brocato Dep. 2:65–66, 2:82); *id.,* Exh. L (Romano Dep. 3:38); *see also* Defendants' Initial Memorandum, Exh. I (Offering Circular, Exh. E (FDIC's Notice of Charge and Hearing, detailing its allegations of unsafe and unsound banking practices)); *id.* (Offering Circular, Exh. F (Colonial Bank's financial statements for Dec. 31, 1981 and Dec. 31, 1982)).[1] Even if Brocato and Romano were not wholly aware of the full extent of Colonial Bank's financial condition, their own actual knowledge about the Bank's poor condition was sufficient to put each of them on notice not to rely on any alleged omissions in the Purchase Agreement about Colonial's financial status. A person with no banking experience would have been on sufficient notice, and these two, long in the banking industry—13 years for Romano and 35 years for Brocato—cannot argue otherwise.

■ *Allegations (b) and (c):* Brocato and Romano next allege that defendants failed to disclose to them the risks attend-ant to owning bank stock in general and Colonial Bank stock in particular, and specifically failed to disclose that the Colonial Bank stock could decline in value. Any reasonable person knows that stock, any stock, can decline in value; October 14th last, not to mention the innumerable number of bank failures in this region of the country, merely illustrated once again this single truth of stock markets. As the Ninth Circuit stated, "it is not a violation of any securities law to fail to disclose a result that is obvious even to a person with only an elementary understanding of the stock market." *Vaughn v. Teledyne, Inc.*, 628 F.2d 1214, 1220 (9th Cir.1980) (citing *Alabama Farm Bureau Mutual Casualty Co. v. American Fidelity Life Insurance Co.*, 606 F.2d 602, 611 (5th Cir.1979), *cert. denied*, 449 U.S. 820, 101 S.Ct. 77, 66 L.Ed. 2d 22 (1980)). Thus, even ignoring both men's substantial number of years in the banking business, the Court would have to reject their vague assertions that the defendants did not tell them that the Colonial Bank stock might decline, even radically, in value.

■ *Allegations (d) and (e):* The pair next assert that defendants failed to disclose to them that the defendants could not purchase the Colonial Bank shares either if Louisiana did not pass a multi-parish banking statute or if federal and state bank regulators withheld their approval of such a purchase. Again, these facts were, or should have been, obvious to both men based on their long banking experience. The depositions of both showed that each knew more than enough to put them on notice of the regulatory restrictions to the defendants' purchasing of other banks' stock. *See* Defendants' Reply Memorandum, Exhs. F–G (Brocato Dep. 2:89–90,

---

1. Plaintiffs assert they never received the Offering Circular and were only given the second page of the subscription agreement. Such assertion, even if true, is of no help to plaintiff's position and merely strengthens defendants' arguments that a person in plaintiffs' position could not have reasonably and justifiably relied on the alleged oral misrepresentations/omissions and should have requested the first page of the subscription agreement and in turn the Offering Circular, to which the subscription agreement refers by incorporation, if these documents were in truth not originally given to plaintiffs. Courts have refused to impose liability when information that would correct or cure an alleged misrepresentation/omission was available to the plaintiff. *See, e.g., B. Rosenberg & Sons, Inc. v. St. James Sugar Cooperative, Inc.*, 447 F.Supp. 1, 5 (E.D.La.1976), *aff'd without published opinion,* 565 F.2d 1213 (5th Cir.1977).

2:92–93); *id.*, Exh. M (Romano Dep. 3:56–57).

■ *Allegation (i):* The pair further asserts that the Offering Circular and its exhibits failed to disclose the true value of the Colonial Bank stock. Not only do plaintiffs offer no explanation of how or in what respect the Offering Circular was in some way defective on this point, but also the Court, upon own review of the Offering Circular, finds that the Offering Circular states the method used for its computation of value. If Brocato and Romano had any dispute with the computational methodology of their own lawyer (Louis Shushan), among others, they should have made their own independent calculations or sought other independent advice. Further, as officers of JGB, they had access to the same information as did their personal lawyers and others.

■ As to allegation (f)—that the defendants did not disclose that a subsequent holder in due course of plaintiff's promissory notes could enforce payment thereon—the Court finds this allegation to be bordering on frivolous. While defendants suggest that this allegation amounts to an admission of federal criminal activity on plaintiffs' part (inasmuch as plaintiffs sold other stock to other investors and, presumably under their allegations, would have made the same representations as bank officers to borrowers), *see* 18 U.S.C. §§ 656, 1005, 1014, this Court need not decide such issue. The Court simply repeats that the security laws do not protect against failure to disclose what any investor, let alone any banker, should know. Plaintiffs' conclusory statements notwithstanding, it is patent that banks are not in the business of lending money without an expectation of repayment.

■ In allegations (f), (g), and (h), plaintiffs essentially assert that defendant made oral representations that the defendant would not enforce payment on the promissory notes and that defendants would repurchase plaintiffs' stock. In their deposi-

tions, however, both revealed a complete inability to name a single person who made any such representation. Romano merely stated he "got the feeling" that the defendants would repurchase his stock. Defendants' Reply Memo, Exh. N (Romano Dep. 3:97). A "feeling" does not a misrepresentation make. A feeling is no more than an unsubstantiated rumor, no more than idle (and of course inadmissible) hearsay. *See, e.g., Martin v. John W. Stone Oil Distributor, Inc.*, 819 F.2d 547, 549 (5th Cir.1987). As Mercutio told Romeo:

> True, I talk of dreams,
>
> Which are the children of an idle brain,
>
> Begot of nothing but vain fantasy,
>
> Which is as thin of substance as the air.

W. Shakespeare, *Romeo and Juliet*, act I, scene IV, lines 96–99. Brocato's testimony is no less fatally vague on this point. *See* Defendants' Reply Memorandum, Exh. H (Brocato Dep. 2:248–49). Mere conclusory statements, even if in affidavit or deposition form, are insufficient to defeat summary judgment. *See, e.g., Galindo v. Precision American Corp.*, 754 F.2d 1212, 1216 (5th Cir.1985).

The Offering Circular specifically warns against any oral representations at variance with the Offering Circular, as these alleged oral representations would be. Further, the two promissory notes plaintiffs signed each include on their face the typical incorporation clauses found in commercial agreements:

> All parties hereto further severally agree that this note evidences and sets forth their entire agreement with the holder hereof and that no modification hereof shall be binding unless in writing and signed by the parties hereto.

Put simply, it would be unreasonable for plaintiffs to presume these allegations on non-enforcement to be true in the face of the black and white texts [2] to the contrary. *See Kennedy v. Josephthal & Co.*, 814 F.2d 798, 803 (1st Cir.1987).

---

**2.** Even assuming for argument's sake that plaintiffs never received the Offering Circular and that they were reasonable in not asking to re-

view it, *cf. supra* note 1 (rejecting this argument), plaintiffs cannot escape the express terms of the promissory notes they signed.

Plaintiffs' opposition never once directly addressed defendants' core argument; instead, plaintiffs attempted to manufacture issues of material fact by raising the issue of reliance on counsel[3] and by distorting defendants' arguments. *See also Albertson v. T.J. Stevenson & Co.*, 749 F.2d 223, 228 (5th Cir.1984) (nonmovant cannot defeat a summary judgment motion by submitting an affidavit that directly contradicts, without explanation, his previous testimony). Plaintiffs would have the Court construe defendants' argument as being an argument that plaintiffs are civilly responsible for the alleged misdeeds of the bank solely "by virtue of their titles" as President and Executive Vice President. Defendants' position is not this narrow; as defendants suggest, plaintiffs' status as corporate officers for the defendants merely corroborates the weakness of their position. *See also Ray v. Karris*, 780 F.2d 636, 643 (7th Cir.1985) (the law may not presume that senior corporate officers and directors of a corporation are ignorant of their corporation's affairs).

In concluding, the Court quotes from defendants' brief:

> Brocato and Romano would have this Court believe that while they were in their "official roles" as members of the Executive Five, they acted as the defendants' agents who, by withholding or misrepresenting certain material information, induced the "purchasers" into purchasing the Colonial Bank stock. Once they assumed the role of "purchasers," however, they lost all knowledge of the transaction and became innocent victims of the Executive Five. The dual roles

are impossible—Brocato and Romano are essentially claiming that they deceived themselves.

Defendants' Initial Memorandum at 68. After long review of the parties' submission—erroneously convinced that there was more to the issue than what appeared at first glance—the Court concludes that its initial reaction was correct: these two particular investors have no valid claim against the corporate entities for which they worked. Having written twelve pages in this order, the Court does not mean to suggest that it believes plaintiffs' claims were even close; reduced to its essentials, their claims—that they were deceived by, among others, themselves, borders on being, at least legally, frivolous.

In sum, the Court must now dismiss plaintiffs' claims.[4]

### III.

■ As a last ditch effort, plaintiffs assert that defendants' counsel should be disqualified on grounds that they previously represented plaintiffs. As plaintiffs' counsel all but flatly conceded at oral argument when he acknowledged that neither plaintiff had ever obtain personal advises from —have never even met with—any Jones, Walker lawyer prior to this lawsuit, this position borders on frivolous. As the documentary evidence in the record fully supports, Jones, Walker was representing the defendant banks, while plaintiffs and certain other bank officials retained separate counsel, Louis Shushan, to represent their own interests in connection with the Colonial Bank stock sale. The Court rejects this argument.[5]

---

**3.** Even if factually correct, this argument creates no genuine disputes of contested *material* fact: reliance on "outside consultants" and in-house subordinates cannot alter plaintiffs' own testimony, as discussed above, that they knew many of the true facts allegedly misrepresented or omitted and had access to the Offering Circular and other information that clearly disclosed the rest.

**4.** Defendants also move to dismiss all remaining pendent state law claims. While the Court would question whether it should exercise its discretion to adjudicate these claims if they were the sole claims to be heard at a trial, the

Court exercises its discretion to decide these claims, for the Court determines that summary judgment is likewise warranted as to these claims—largely for the same reasons expressed in Part II of this order. In sum, and noting that plaintiffs expressed no opposition to defendants' motion to dismiss these claims, the Court dismisses all state law claims with prejudice.

**5.** Defendants' counsel suggests that the issue is moot if the Court grants summary judgment for the defendants. Because plaintiffs still have the right to appeal and conflicts of interest apply equally at appellate levels of litigation, the issue is not moot—it is simply meritless.

## IV.

For these reasons, the Court GRANTS defendants' motion and DENIES plaintiffs' request to disqualify defendants' counsel. The Clerk of Court is hereby directed to enter final judgment dismissing plaintiffs' complaint at their costs.[6]

---

**6.** On July 22, 1987, the Court previously dismissed the claims of Mickey O'Connor without prejudice, and on April 26, 1988, the Court granted plaintiffs' motion to dismiss certain state law claims with prejudice; the Clerk's judgment shall reflect these facts.

Dictum from the Fifth Circuit suggests that a Rule 54(b) certification is necessary before this Court may dismiss the instant matter (Civ. No. 86–4254) inasmuch as other claims still remain in these consolidated matters (*see* Civ. No. 88–2402). *See Ringwald v. Harris,* 675 F.2d 768, 771 (5th Cir.1982). Accordingly, because, among other reasons, the trial in Civ. No. 88–2402 was to be separate from the trial in the instant matter, the Court expressly determines that there is no just reason for delay in the entry of judgment as to the claims in the instant matter.