### O. William REEDER

v.

### The SUCCESSION OF Michael B. PALMER, Lynn Paul Martin, Individually and d/b/a LPM Enterprises and Bank of LaPlace.

#### Civ. A. No. 89–3025.

United States District Court,
E.D. Louisiana.

April 25, 1990.

Jerry Clyde Paradis and Bruce A. North, Molony, North & Kewley, Metairie, La., for plaintiff O. William Reeder.

Robert E. Kerrigan, Jr. and Ellis B. Murov, Deutsch, Kerrigan & Stiles, New Orleans, La., for defendant Succession of Michael B. Palmer.

John Gregory Odom, McGlinchey, Stafford, Mintz, Cellini & Lang, New Orleans, La., for defendants Lynn Paul Martin, d/b/a LPM Enterprises and Bank of La-Place.

ROBERT F. COLLINS, District Judge.

Defendant, Bank of LaPlace ("BOL"), moves the Court to dismiss the Complaint of plaintiff, O. William Reeder ("Reeder"), for failure to state a claim upon which relief may be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and for failure to plead fraud with particularity, pursuant to Federal Rule of Civil Procedure 9(b).

Likewise, defendant, the Succession of Michael B. Palmer ("Palmer"), moves the Court to dismiss Reeder's Complaint pursuant to Rules 12(b)(6) and 56 of the Federal Rules of Civil Procedure. For the reasons given below, the Court GRANTS the motions.

## I. FACTS

This action is brought under Sections 12(1) and 12(2) of the Securities Act of 1933 (the "1933 Act"), Section 10(b) of the Securities Exchange Act of 1934 (the "1934 Act"), and the Louisiana Securities Act.

Reeder allegedly invested in a purported "travel club" which Reeder alleges was a "Ponzi" scheme operated by co-defendant, Lynn Paul Martin ("Martin").

Reeder's complaint alleges that Martin operated a business whereby he pretended to purchase blocks of airline tickets for passengers on gambling junkets to Las Vegas hotels. Martin allegedly promised potential investors that they would receive a rate of return of 6% per month on any amounts they provided to him.

Reeder allegedly provided a great deal of money over a period of time to both Palmer and Martin in exchange for postdated checks written by Martin to Palmer. In each transaction, Palmer gave Reeder one check which allegedly represented Reeder's principal and one check which allegedly represented the six percent (6%) interest. The postdated checks were allegedly written by Martin to Palmer when he received Reeder's funds. The checks received by Reeder were allegedly covered by funds obtained from other unidentified investors. Reeder alleges that BOL assisted Martin's perpetration of the scheme by allowing Martin to maintain a bank account at BOL.

Reeder further alleges that BOL allowed Martin to repeatedly overdraw his account.

## II. LAW

The critical issue for the purposes of the motions to dismiss and this cause of action is whether a postdated check is a security. If postdated checks are not securities, then Reeder's Complaint and cause of action must be dismissed.

It is well settled that before the 1933 Act or the 1934 Act applies, "[i]t is necessary to prove that what was sold were securities under the Act." *American Grain Association & Canfield, Burch & Mancuso; SEC v. C.M. Joiner Leasing Corp.,* 320 U.S. 344, 64 S.Ct. 120, 88 L.Ed. 88 (1943). It is likewise well settled that the definitions of security in the 1933 and 1934 Acts are "virtually identical" and are intended to be the same. *Landreth Timber Co. v. Landreth,* 471 U.S. 681, 105 S.Ct. 2297, 85 L.Ed.2d 692 (1985); *Tcherepnin v. Knight,* 389 U.S. 332, 88 S.Ct. 548, 19 L.Ed.2d 564 (1967). Likewise, instruments which are not "securities" under federal law are not securities under Louisiana law. *Rogillio v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 448 So.2d 1340, 1346 (La.App.1984) (Commodity futures contracts are not securities under Louisiana law as they are not securities under federal law.). Having established that a security is required in this case, the Court must now define security.

### A. What Is A Security?

The 1933 Securities act defines a security as follows:

The term "security" means any note, stock, treasury stock, bond, debenture, evidence of indebtedness, certificate of interest or participation in any profit-sharing agreement, collateral-trust certificate, preorganization certificate or subscription, transferable share, *investment contract,* voting-trust certificate, certificate of deposit for a security, fractional undivided interest in oil, gas, or other mineral rights, or, in general, any interest or instrument commonly known as a "security", or any certificate of in-

terest or participation in, temporary or interim certificate for, receipt for, guaranty of, or warrant or right to subscribe to or purchase, any of the foregoing.

15 U.S.C. § 77b(1) (emphasis added).

The Securities Exchange Act of 1934, 15 U.S.C. § 78a *et seq.*, defines security as follows:

> The term "security" means any note, stock, treasury stock, bond debenture, certificate of interest or participation in any profit-sharing agreement or in any oil, gas, or other mineral royalty or lease, any collateral-trust certificate, preorganization certificate or subscription, transferable share, *investment contract*, voting-trust certificate, certificate of deposit, for a security, or in general, any instrument commonly known as a "security"; or any certificate of interest or participation in, temporary or interim certificate for, receipt for, or warrant or right to subscribe to or purchase, any of the foregoing; *but shall not include currency or any note, draft*, bill of exchange, or banker's acceptance which has a maturity at the time of issuance of not exceeding nine months, exclusive of days of grace, or any renewal thereof the maturity of which is likewise limited.

15 U.S.C. § 78c(a)(10) (emphasis added).

Louisiana has a Blue Sky Law. *See* La. R.S. 51:701 *et seq.* It defines a security as follows:

> (a) "Security" means any note; treasury stock; bond; debenture; evidence of indebtedness; certificate of interest or participation in any profit-sharing agreement; collateral-trust certificate; preorganization certificate or subscription; transferable share; *investment contract;* voting-trust certificate; certificate of deposit for a security; fractional undivided interest in oil, gas, or any other mineral rights; any put, call, straddle, option, or privilege on any security, certificate of deposit, or group or index of securities (including any interest therein or based on the value thereof); or, in general, any interest or instrument commonly known as a "security"; or any certificate of interest participation in,

temporary or interim certificate for, receipt for, guarantee of, or warrant or right to subscribe to or purchase any of the foregoing.

> (b) "Security" shall not mean: ...
> (ii) *Currency,* or any note, *draft,* bill of exchange, loan participation or banker acceptance, or any other evidence of indebtedness issued by a bank other than the shares of such institution as defined in R.S. 6:251, et seq. for state banks and the preferred and common stock of national banks as defined in 12 U.S.C.A. Sections 51(a) and 51(c).

La.R.S. 51:702(15) (emphasis added).

### B. Is A Postdated Check A Security?

▉▉▉▉ Before determining whether a postdated check is a security, it is necessary to define "check." A check is "a draft drawn on a bank and payable on demand, signed by the maker or drawer, containing an unconditional promise to pay a sum certain of money to the order of the payee." *Black's Law Dictionary* at 215 (5th Ed. 1979). Under Louisiana law, negotiable instruments include a "check" if it is a "draft drawn on a bank and payable on demand." *See* La.R.S. 10:3–104(2)(b). Based on the foregoing, it is clear to this Court that a check is a draft.

The 1934 Act expressly excludes drafts from the definition of securities. 15 U.S.C. § 78c(a)(10). The 1933 Act does not expressly exclude drafts. Under the 1933 Act, a draft is an exempted security. 15 U.S.C. § 77c(a)(3). The 1933 Act provides:

> (a) ... this title shall not apply to any of the following classes of securities:
> (3) Any note, draft ... which arises out of a current transaction ... which has a maturity at the time of issuance of not exceeding nine months...."

15 U.S.C. § 77c(a)(3). The Louisiana Securities Act expressly excludes drafts from the definition of security. La.R.S. 51:702(15).

Based on the foregoing, the postdated checks involved in this case are drafts. Since the checks are drafts, they are excluded by the 1934 Act and the Louisiana Securities Act and exempted by the 1933

Act. On this basis, Reeder's claims under the securities laws must be DISMISSED.

### C. Are Postdated Checks Securities Under the Family Resemblance Test?

■ The Court "is not bound by legal formalisms, but instead take[s] account of the economics of the transaction...." *Tcherepnin v. Knight, supra.* Although this case does not involve notes, the Court must recognize the Supreme Court's recent decision in *Reves v. Ernst Young,* —— U.S. ——, 110 S.Ct. 945, 108 L.Ed.2d 47 (1990).

In *Reves,* the Court held that notes are not per se securities but must be examined using the "family resemblance" test. *Reves, supra,* 110 S.Ct. at 951. Under the "family resemblance" test, "A note is presumed to be a security, and that presumption may be rebutted only by a showing that the note bears a strong resemblance ... to one of the enumerated categories of instrument." *Id.* at 952. The *Reves* court provided four factors to determine whether a note satisfies the family resemblance test. The factors are as follows: (1) the motivations that prompted the buyer and seller to enter into the transaction; (2) whether there is a common plan of distribution for speculation or investment; (3) the reasonable expectations of the investing public; and (4) whether some factor, such as the existence of another regulatory scheme, significantly reduces the risk of the instrument and thus renders the application of the Securities Acts unnecessary. *Id.* at 951–952. Although the instruments in this case are postdated checks, the Court will nevertheless apply the "family resemblance" test to determine whether the checks are securities.

First, the checks were issued in the context of a loan with one check representing the loan principal and the other check representing a fixed rate of interest on the loan principal. The Court finds that the family resemblance test's first prong is not satisfied for the following reasons: (1) Reeder could not expect the checks to generate a profit due to the fixed interest rate; (2) the money given to Martin facilitated the purchase of alleged airline tickets; and (3) the money given to Martin corrected Martin's cash flow difficulties. *Reves, supra.*

Second, there was no plan of distribution that led to common trading for speculation or investment. *Id.* Thus, the checks do not satisfy *Reves'* second prong. Third, as noted above, the checks were not commonly traded. Thus, it is unnecessary to examine the reasonable expectation of the investing public. Assuming that Reeder and others like him are considered a part of the investing public, the checks here do not satisfy the third prong of the family resemblance test. The public's only expectation could be that of loan repayment with a fixed—albeit high—rate of interest. The Court finds that this does not satisfy *Reves.* Finally, the Court must determine whether some other factor reduces the risk of the checks at issue here. Although the fraud perpetrated by Martin is not covered by any regulatory scheme, the holder of a worthless check has a right—albeit a hollow one in this case—under Louisiana law to pursue an action against the issuer.

In sum, the Court finds that the "family resemblance" test is not satisfied and the checks are not securities.

### D. Are Postdated Checks Investment Contracts?

■ The Court will analyze the checks to determine whether they are investment contracts and therefore covered by the Securities Laws.

The definition of an "investment contract" was first set forth in *SEC v. W.J. Howey Co.,* 328 U.S. 293, 298–99, 66 S.Ct. 1100, 1103, 90 L.Ed. 1244 (1946), as follows:

> "[A]n investment contract for purposes of the Securities Act means a contract, transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party."

The Fifth Circuit has broken this test down into three elements: (1) a money investment; (2) in a common enterprise; and (3) with profits of the enterprise to be derived

**132**

solely from the efforts of the promoter or a third party. *SEC v. Koscot Interplanetary, Inc.*, 497 F.2d 473, 477 (5th Cir.1974).

"Profits" means "a participation in earnings resulting from the use of the investors' funds." *B. Rosenberg & Sons, Inc. v. St. James Sugar Cooperative, Inc.*, 447 F.Supp. 1, 4 (E.D.La.1976). "Profits" also means "either capital appreciation resulting from the development of the initial investment ... or a participation in earnings resulting from the use of investors' funds...." *Howey*, 328 U.S. at 300, 66 S.Ct. at 1103; *United Housing Foundation v. Forman*, 421 U.S. 837, 852, 95 S.Ct. 2051, 2060, 44 L.Ed.2d 621 (1975).

In this case, Reeder did not expect capital appreciation from the postdated checks he received and did not participate in earnings resulting from the use of his funds, because the checks only provided a fixed rate of return. In the Fifth Circuit, a plaintiff does not have a "reasonable expectation of profits" under the *Howey* test, when plaintiff only expects "repayments of the principal it loaned plus interest at a fixed rate ... no different than that expected in an ordinary commercial transaction." *United American Bank of Nashville v. Gunter*, 620 F.2d 1108, 1118 (5th Cir.1980). The Court finds that the lack of profits under the *Howey* test is determinative of the checks' status. The checks are not securities because profits, as defined by *Howey*, are absent.

### III. CONCLUSION

Having concluded that the motions to dismiss should be GRANTED, the Court need not decide the other motions presented. Finding that postdated checks are not securities, the transaction here did not generate "profits" and that the "family resemblance" test is not satisfied, the Court GRANTS defendants' Motion to Dismiss. Plaintiff's claims against all defendants are hereby DISMISSED with prejudice.