KLIEBERT, Judge.
This suit was brought by plaintiffs-appellants, Claude J. Autin, d/b/a Ja-Bob Investment Company and Louisiana Marine, Inc. (collectively “Autin”) alleging that he was a victim of a criminal “Ponzi and Check Kiting Scheme”[1] perpetuated by Lynn Paul Martin (“Martin”). The suit[2] urges claims against the defendants-appel-lees herein, Bank of LaPlace (“BOL”) and Metairie Bank and Trust (“MB & T”) *73 among others. The theory for recovery on the claims is grounded in: (1) negligence, (2) violation of the Louisiana Securities Act, R.S. 51:701 et seq. (hereafter Securities Act), and (3) violation of the Louisiana Unfair Trade Practices and Consumer Protection Act, R.S. 51:1401 et seq. (hereafter Unfair Trade Practices Act).
The trial judge found no securities were involved and neither bank was a seller of securities and therefore dismissed Autin’s claim under the Securities Act as meritless. Further, he found Autin’s claims under the Unfair Trade Practices Act were equally without merit because the Act does not apply to banks. Moreover, he found that for Autin to recover in tort under its allegations of negligence the court would have to find the banks violated a duty owed to these particular plaintiffs. Based on these findings, he concluded the amended petitions did not disclose a cause of action and thus granted both banks’ exceptions of no cause of action.
Autin appeals, urging error, and argues that the allegations of the petition support a cause of action on all three theories of recovery above enumerated. For the following reasons, we affirm the trial court’s judgment.
According to Autin, Martin operated a business whereby he solicited investors to provide his company, LPM Enterprises, with capital to purchase huge blocks of airline tickets for passengers on gambling junkets to Las Vegas. Martin represented that he had arrangements with five hotels in Las Vegas, Nevada to reimburse Martin for the cost of the tickets plus pay Martin approximately 9% in addition thereto. According to Autin's petition, Martin initially agreed that in consideration for the funds advanced by Autin, Martin would pay him five percent (5%) per month on the outstanding balance which was later reduced to four percent (4%). Autin alleges that when he advanced funds to Martin, he received in exchange two post-dated checks. One check represented the return of principal, and the other check represented a fixed interest payment of approximately four percent (4%). The checks received by Autin were allegedly covered by funds obtained from other unidentified investors. Prior to April 1988, all went well and most of the bogus profits generated by this “enterprise” were returned by Autin to Martin to be reinvested in the “enterprise.” On or about April 26, 1988, Martin pulled the plug on his Ponzi scheme and turned himself in to federal authorities.
In its reasons for judgment the trial court said:
“The next ground upon which plaintiffs based their suit is violation of the security laws. As to this claim, the Court finds Bank of LaPlace and Metair-ie Bank and Trust Company were not ‘sellers’ of securities to plaintiffs. LSA-R.S. 51:712(A). Pinter v. Dahl, [486 U.S.622] 108 S.Ct. 2063 [100 L.Ed.2d 658 (1988) ].
The Court is further of the opinion that the checks in question are not securities. LSA-R.S. 51:701 et seq. Reeder v. The Succession of Michael B. Palmer, et al, Civil Action No. 89-3025 [736 F.Supp. 128] (U.S.D.C. E.D.La.) May 25, 1990; Guidry v. Bank of LaPlace, et al Civil Action No. 89-1690 [740 F.Supp.1208] (U.S.D.C. E.D.La.) May 31, 1990.
As to the claim of Unfair Trade Practices, the Court finds this ground equally without merit. The statute is not applicable to Bank of LaPlace or Metairie Bank and Trust. See First Financial Bank, F.S. (sic) v. Butler, 492 So.2d 503 (La.App. 5th Cir.1986).”
We fully agree with the reasoning and hence cannot say the trial judge erred in dismissing the plaintiffs’ claims insofar as they were based on the Securities Act or under the Unfair Trade Practices Act.
As for the negligence claim, Autin claims BOL and MB & T are liable to him in tort because: (1) Both banks failed to perform a due diligence investigation of Martin’s financial dealings; (2) As to BOL, by holding overdraft checks several days and waiting for other deposits, including kiting checks, presented for payment on Martin’s account; and (3) Both banks knew or should have known Martin’s activities were improper or illegal.
Autin argues that when checks previously written by Martin to various persons *74 were presented for payment each day, an “overdraft” balance would be created in his account. Martin would then cover that balance by obtaining and depositing certified or cashier’s checks from other investors. Plaintiffs argue BOL should have known that Martin’s activities were ■ improper and/or illegal since Martin allegedly ad-' vised certain officers of the bank of his business “enterprise” yet Martin did not deposit or write checks to or from airlines or hotels out of his BOL account, an unspecified but large amount of money flowed through Martin’s account, and finally, because Martin deposited cashier’s checks or certified checks in his account to cover overdrafts. As to MB & T, Autin argues that MB & T was negligent by the acts of Alan Sheppard, an officer of MB & T, who handled the Palmer accounts (Michael Palmer, d/b/a Palmer Investment, was an investment counselor for a large number of persons who invested in Martin’s Ponzi scheme) and, based on Palmer’s advice, Sheppard encouraged investments in the scheme and even made loans for the purpose of investing the loan proceeds with Martin. Further, on numerous occasions, MB & T accepted deposits from Martin into the Palmer accounts and, with the approval of Alan Sheppard, gave Martin immediate credit for these deposits and issued cashier’s checks to Martin.
The main thrust of Autin’s argument is that because of the above banks’ actions, BOL and MB & T aided and abetted Martin’s perpetration of the scheme against the investors (plaintiffs). In the Kuebler case, Docket No. 90-CA-670, plaintiffs entered into stipulations with MB & T agreeing he was not alleging fraud or criminal intent on the part of MB & T and in oral arguments here agreed there were no allegations of fraud or criminal intent on the part of BOL.
In order to prevail against BOL and MB & T on a negligence theory under Louisiana law, Autin must allege facts to establish each of the following elements:
(1) Was the conduct in question a cause-
in-fact of the resulting harm?
(2) What, if any, duties were owed by
the respective parties?
(3) Were the requisite duties breached?
(4)Was the risk, and harm caused, within the scope of protection afforded by the duty breached?
See Mart v. Hill, 505 So.2d 1120 (La.1987). In his reasons for judgment on this issue, the trial judge said:
“As to the allegation of negligence, in order for plaintiff to prevail on this theory, the defendants must owe a duty to these plaintiffs. The Court is of the opinion that the banks in this instant cause violated no duty to plaintiffs. See Woodward v. Metro Bank of Dallas, 522 F.2d 84 (5th Cir.1975); Cummingham (sic) v. Merchant’s National Bank, 4 F.2d 25 (1st Cir.1925); and Shreveport Production Credit Association v. Bank of Commerce, 405 So.2d 842. The banks owe no duty to the plaintiffs to protect them against the type of harm arising from the fraudulent scheme. The banks owe no duty in the instant matter under the general law of negligence to a non-consumer with whom it never transacted business.”
In Cunningham v. Merchants’ National Bank, supra, a case similar to the one at bar and which was cited by the trial court, at pages 29-30, the court said:
“Facts which warrant suspicion would not necessarily cause the bank to know, or have reasonable cause to know, that Ponzi was bankrupt, or that he was a swindler.
Banks are under no duty at law to warn the investing public as to the financial condition of their depositors. Investors may be assumed to keep themselves reasonably informed as to the financial capacity of persons with whom they are dealing in their investments.”
The Louisiana Supreme Court addressed a bank’s duties in Shreveport Prod., Etc. v. Bank of Commerce, 405 So.2d 842, 845-846 (La.1981) and surmised the following:
“... But, when a bank receives a check for deposit which, in all aspects, is valid on its face and contains an endorsement on its back which recites that the *75 payee is the sole and unconditional owner, that bank has the right to treat the check as it would any other deposit. To require the bank to investigate the underlying transaction which led to the issuance of the instrument or to permit a third person to challenge the depositor’s ownership under the present circumstances would result in an unreasonable burden upon, and disruption of, regular and normal banking transactions. (Footnote omitted) (Emphasis supplied)
In essence, the duty of the bank runs to the customer, rather than to a third party payee.
Notably, Autin has not alleged that BOL and MB & T performed anything other than normal banking functions, for which they received routine fees, by permitting a depositor to maintain a bank account.
In accord with Louisiana law, a petition must contain “a short, clear and concise statement of the object of the demand and of the material facts upon which the cause of action is based ...” C.C.P. Article 891. Conclusions of law or fact and evidentiary facts cannot substitute for proper factual allegations to properly state a cause of action. See Wheelahan v. State, Etc., 376 So.2d 576, 577 (4th Cir.1979).
The criteria for ruling upon an exception of no cause of action are set out succinctly in Robinson v. North American Royalties, Inc., 470 So.2d 112, 114 (La.1985), as follows:
“In deciding an exception of no cause of action, the court accepts the facts alleged in the petition, without reference to any extraneous supporting or controverting evidence, and determines whether the law affords any relief to plaintiff if those facts are proved at trial.”
In our view, Autin’s allegations regarding the banks’ liability under a negligence theory, under the Securities Act and under the Unfair Trade Practices Act are insufficient to state a cause of action against the banks.
Accordingly, we affirm the trial court’s judgment. All costs are imposed on appellants.
AFFIRMED.

. A "Ponzi” or "pyramid” scheme is one in which the money entrusted to perpetrator (here Martin) is never invested in any legitimate for-profit venture, but rather the money is paid out to victims with the fraudulent representation that the returns are profits when in fact the money returned is a portion of the capital originally transferred.

. The original petition was filed against Martin, D/B/A LPM Enterprises on April 22, 1988. Subsequently, on April 29, 1989, an amended petition was filed expanding the allegations and naming additional defendants.