[No. 17517.   Department One.   December 6, 1922.]

# Washington Co-operative Egg & Poultry Association, *Respondent*, v. Frederick A. Taylor, *Appellant*.[1]

Associations (4, 5) — Rights and Liabilities of Members — Actions — Contracts With Association — Breach — Evidence — Sufficiency. In an action by a co-operative poultry association against a member for breach of his contract to sell and deliver his eggs exclusively to the association, defendant cannot defend on the ground of breach of his contract by the commingling of his product with that of others, where there was no such provision in the contract and no injury to him in so doing.

Same (4, 5). It is no defense to such an action that the association issued permits to other members to sell eggs to other parties, where the by-laws of the association authorized such permits.

Same (4, 5). It is no defense to such an action that the association established a grain and feed department and lost money thereon, in the absence of any prohibition in its articles of association.

Same (4, 5). The defense in such an action that the association did not promptly make its weekly payments is not sustained, where it paid with usual promptness except for a few weeks when the market was dull, and paid within a reasonable time.

Same (4, 5). The defense that the association did not provide ample facilities for handling the eggs and warehousing is not sustained, where there was a reasonable endeavor to handle all eggs with expedition and any delay was the inevitable result of over supply and lack of market.

Same (4, 5). The defense of overcharges is not sustained where defendant was charged less than the actual cost on some of his eggs, and taken as a whole, he was charged less than the contract authorized.

Evidence (37) — Relevancy of Collateral Facts. In an action for breach of contract between a poultry association and a member for the exclusive sale of eggs to the association, it is proper to exclude the evidence of other members having similar contracts that they had refused to comply therewith because dissatisfied, and the reasons therefor.

[1]Reported in 210 Pac. 806.

CORPORATIONS (12)—ATTACKING VALIDITY OF CORPORATIONS. In a poultry association's action against a member for breach of contract to sell and deliver his eggs to the association, the member cannot show that, at the time his contract was entered into, the capital stock had not been subscribed and paid as required by statute and that the association was not entitled to engage in business.

Appeal from a judgment of the superior court for King county, Frater, J., entered May 3, 1922, upon findings in favor of the plaintiff, in an action for damages for breach of contract, and for injunctive relief. Affirmed.

*Poe & Falknor,* for appellant.

*Peterson & Macbride,* for respondent.

BRIDGES, J.—The plaintiff was incorporated under the laws of this state, primarily for the purpose of marketing eggs and other articles for its stockholders along co-operative lines, in the interests of the producing and consuming public.  On March 16, 1920, the parties to this action entered into a written agreement whereby, for a certain designated period, the defendant agreed to sell and deliver to the plaintiff all of the eggs produced by him and plaintiff agreed to buy such eggs on certain terms hereinafter more fully disclosed. A great many other persons throughout the state made similar contracts with the plaintiff.  During the life of the contract, the defendant not only refused to deliver his eggs to the plaintiff, but delivered them to other parties.  The contract provided, among other things, that

"Inasmuch as it is and ever will be impracticable and extremely difficult to determine the actual damage resulting to the association [the plaintiff] should the producer [the defendant] fail to deliver to the association the eggs and poultry herein agreed to be delivered, the producer hereby agrees to pay to the association five cents per dozen eggs and one dollar per dozen com-

mercial poultry sold, consigned or marketed by or for him and so undelivered to the association, as liquidated damages for the breach of this contract in that regard.''

The plaintiff instituted this suit to recover damages of the defendant for failure on his part to live up to the terms of the contract and for an injunction against him, forbidding him to sell or deliver his eggs, during the life of the contract, to any person other than the plaintiff. There was a judgment in favor of the plaintiff for $150, and an injunction against the defendant as prayed for. From this judgment the defendant appeals here.

It is first contended that the respondent breached the contract in that it commingled the appellant's eggs with those of other persons, and particularly with the eggs of persons who had no contractual relationship with it. The contract provides that eggs delivered by the appellant may be commingled and sold with other eggs of like grade purchased by the respondent under similar contracts. There is nothing in the contract which prohibits the respondent from commingling appellant's eggs with those purchased by it from persons who are not connected with the association; consequently, it did not breach its contract in that regard. Even if this were not so, there is no showing that the appellant was damaged by the respondent's action in this regard. In addition to this, the testimony shows that less than two per cent of the eggs obtained by the association were purchased by it from outside parties, and if there were a breach of the contract in the respect named, it was to such an immaterial extent as not to justify the appellant in refusing to live up to his contract.

It is further contended that the respondent, without authority and to appellant's damage, issued permits to

various persons holding similar egg contracts with it, permitting them to sell their eggs to persons other than respondent. While the contract itself is silent as to the right of the association to issue these permits, its by-laws provide that "any member having signed the marketing agreement may make application to the association for a permit enabling him to sell eggs under certain conditions as prescribed in the permit." Appellant being a member of the association, was bound to take notice of this provision of the by-laws; consequently, it is as though that provision were in the contract itself.

It is further contended that respondent breached the contract by taking certain of the profits which had been made in its egg business and established a grain and feed department in connection with its other activities, and that such department had lost money, a part of which would otherwise have been paid to the appellant in the nature of a dividend. The answer to this objection is that there is nothing in the contract which prohibits the association from entering the grain and feed business; on the contrary, its articles of association expressly authorize it so to do. In addition to this, it is very questionable whether the association lost any money while engaged in the grain and feed business. In any event, having the right to engage in the business, it did not violate its contract with the appellant.

It is also claimed that respondent breached its contract in that it did not promptly and weekly make payments to the appellant. We are unable to find anything in the contract which requires weekly payments to be made. The testimony shows very conclusively that payments were made with unusual promptness except for a few weeks when there was a surplus of eggs and the market therefor exceedingly dull. Under

all of the circumstances, it cannot be said that the respondent did not make payments to the appellant in due course and within a reasonable time.

It is further contended that the respondent did not provide ample facilities for the handling of eggs and, because thereof, those of appellant were not properly inspected, warehoused and sold, and that as a result they became stale and of less value than they otherwise would have been. On this question, the trial court found against the appellant on the facts. It is true that, at times, there was some delay in handling the eggs, but this was apparently the inevitable result of an over supply and inability to dispose of the eggs. The testimony quite conclusively shows that the respondent used a reasonable endeavor to handle not only appellant's eggs but those of all others of its contractors with reasonable expedition.

It is asserted that, while the contract authorized the deduction of not to exceed two cents per dozen for the handling of eggs, as a matter of fact on certain of the eggs delivered by the appellant there was a charge of three and one-half cents per dozen. The testimony tends to show that the association was wholly unable to tell what would be its expense in handling any particular delivery of eggs, and that the only way it could arrive at the matter was to take into consideration the cost over a period of some months, and it was in this manner that the appellant's eggs were handled. Being so handled, the result was that he was charged less than actual cost on some of his eggs, while on others more than the actual cost was deducted, and more than two cents per dozen, but taking the eggs as a whole over a period of several months, the amount charged to appellant was less than that authorized by the contract. That instrument authorized a deduction of not to exceed two cents per dozen of eggs for the cost of

selling, but it also provided that it might make additional charges for transferring and distributing the eggs. The amount charged the appellant was easily within the terms of the contract.

Many questions are raised concerning the introduction of testimony. It is claimed that the court erred in refusing to receive the testimony of other persons who had contracts with the association similar to that of the appellant, to the effect that they had quit delivering their eggs to the association because they were dissatisfied with its conduct, and in refusing to allow such witnesses to testify why they were dissatisfied and why they refused to comply with the terms of their contracts, and also in refusing to permit them to testify that they had not been paid for their eggs within a reasonable time, or within the time provided for in their contracts, and that the association had not handled their eggs with reasonable dispatch and that eggs purchased by the association from non-contract members were commingled with those obtained from the membership, and other like testimony. We think the ruling of the court was right on these matters. It would be entirely immaterial to this action why some other contract member refused to live up to the terms of his contract or how the association may have treated him or that, as a matter of fact, it breached its contract with him. Such witnesses were not parties to the action and their grievances could not be material to appellant's case. In addition to this, much of the offered testimony was inadmissible because it referred to the commingling of eggs which, as we have heretofore said, was not a violation of the contract, or concerning the grain and feed department, which we have held was not a violation of the contract. Testimony of that character was wholly immaterial. Probably the only testimony which was offered and refused and which was, as a matter

of law, admissible, was that concerning the capacity or ability to handle the eggs with such dispatch as that they would not deteriorate on account of age. But already a great deal of testimony had been produced in this regard, and that which was refused by the court was only cumulative, and he had a right to refuse to receive it on that account. We have gone carefully over this branch of the case, and while we cannot here take the space to discuss in detail each offer of evidence, suffice it to say that we do not find any error in these regards.

Appellant also contends that the proof shows that, when his contract was entered into, the respondent's capital stock had not been subscribed and paid in as the statute requires. Appellant having made his contract with the respondent, is in no position to contend that it was not entitled to engage in business because its capital stock had not been subscribed or paid in as the statute requires. At the least, it was a *de facto* corporation, and only the state would be authorized to take advantage of this matter. *American Radiator Co. v. Kinnear*, 56 Wash. 210, 105 Pac. 630; *Spokane v. Amsterdamsch Trustees Kantoor*, 22 Wash. 172, 60 Pac. 141; *Carroll v. Pacific Nat. Bank*, 19 Wash. 639, 54 Pac. 32. The judgment is affirmed.

PARKER, C. J., MACKINTOSH, HOLCOMB, and MITCHELL, JJ., concur.