[No. 24103.   Department Two.   December 19, 1932.]

E. J. BOYLE *et al., Appellants,* v. PASCO GROWERS ASSOCIATION, INC., *Respondent.*[1]

*Moulton & Powell,* for appellants.

*B. B. Horrigan,* for respondent.

BEALS, J.—Pursuant to chapter 115, Laws of 1921, p. 115 (Rem. Comp. Stat., § 2878 *et seq.*), Pasco Cantaloupe Growers Association was, during the month of

[1] Reported in 17 P. (2d) 6.

April, 1923, organized as a corporation. By amended articles of incorporation, adopted February 9, 1928, the name was changed to Pasco Growers Association, Inc.

February 11, 1932, plaintiffs filed their complaint, on their own behalf and on behalf of many other members of the association who authorized plaintiffs to represent them, seeking an accounting on the part of defendant, asking that a receiver be appointed to take charge of the business and assets of defendant, and that such receiver be instructed to convert defendant's assets into cash and distribute the same to plaintiffs and their associates and other persons entitled thereto.

Upon the close of plaintiffs' case, defendant moved for a nonsuit, and, in the course of the argument upon this motion, plaintiffs' counsel stated the relief which plaintiffs claimed, as follows:

"I am claiming that we are entitled to one of two things, either to return to us all the amounts of money that have been deducted from our net returns and used for purposes which they were not authorized to use them for, and/or, that we are entitled to a proportionate part of the permanent fund or permanent investment so that perhaps it would be returned to us; we are entitled to a dissolution of this organization if it is necessary, and we are entitled to a distribution of the assets of the corporation, yielding to these plaintiffs their proportionate part of the assets of the corporation. If your organization has the money on hand with which it can refund to these people the amount of money they would be entitled to have refunded to them, that would give us permanent relief.

"Under the testimony it is apparent that is not the situation, that is, you could be required to refund it to us, raising the money in any way you might see fit, but you have invested it in permanent capital, and if it be found necessary to dissolve the corporation for the purpose of restoring to the plaintiffs their proportionate part of the investment, then we are entitled to dis-

solution of the corporation and appointment of a receiver, and sale of the assets and have distribution accordingly.''

The trial court granted defendant's motion for a nonsuit, and from a judgment of dismissal entered in accordance with the court's ruling, plaintiffs have appealed to this court.

Appellants contend that it appears from the record that respondent, prior to 1932, never adopted by-laws, and that, for this reason, certain of its corporate acts were illegal, and that appellants can now take advantage of the situation thus presented, and that the court should, through a receivership, distribute to appellants a share of respondent's property and terminate respondent's corporate existence.

Appellants also contend that a marketing contract entered into between respondent and Mojonnier & Sons, Inc., a corporation (which will hereinafter be referred to as Mojonnier), was *ultra vires;* that respondent, in furnishing its members with supplies and financial assistance and in purchasing a warehouse, transcended the powers conferred on it by its articles of incorporation, and that, in deducting or retaining from the proceeds of the produce grown by its members and in using the money so reserved for the purposes above mentioned, respondent exceeded its authority, and that the money so deducted must be returned to the membership; that, upon the expiration of the membership contracts, appellants became entitled to immediately receive their proportionate part of the corporate property; that a form of standard marketing contract, adopted by the membership after the expiration of the term of the original contracts, imposed additional and unlawful burdens upon the membership, and that, for this reason, appellants were entitled to terminate relationship with respondent, both active

and associate, and to recover certain amounts which appellants contend had been unlawfully retained by respondent; that the agreement between respondent and Mojonnier converted respondent into an organization whose object was the control of the market, with the result that respondent's operations became unlawful because in restraint of trade. Appellants' formal assignments of error present the questions outlined in the foregoing analysis.

Respondent corporation was rather informally organized. We are satisfied that respondent's officers believed that by-laws, which they deemed proper and adequate, had been regularly adopted. Technically speaking, no such by-laws had been formally adopted by the membership, but at a preliminary meeting by-laws of a similar association were considered and amendments thereto appropriate to the situation in hand were discussed. One of appellants' witnesses, a man who was secretary of respondent up to January, 1932, and who in this proceeding was interested with appellants, testified as follows:

"A. I don't think the by-laws were adopted. I think they were a matter of assumption. Q. They were acting under some sort of by-laws? A. I think there are by-laws in existence, but I don't think they were adopted. Q. That is, you think there was no formal motion made and seconded, and put by the chair, and asked for votes, and so forth? A. Yes, sir. Q. But you do think there were some by-laws, by which the association proceeded to function? A. I think so."

In this connection it may be noted that, at the election of corporate officers held in January, 1932, appellants and their friends lost control of the corporation, whereupon this action was instituted. It is clear that, prior to that time, appellants and their associates had actively participated in the management of respondent and in the business which it did, and that many of the

matters of which appellants now complain were unobjected to by them until the corporate election at which they were out-voted. It does not appear that appellants, or anyone, ever suggested that the corporation had not regularly adopted by-laws, or that any such action was necessary or even proper. By-laws were regularly adopted sometime after January 1, 1932, and, in so far as the situation which existed prior to that time is concerned, appellants were as much responsible for the lack of formality in adopting by-laws as were any other members of the corporation.

We are satisfied that, in so far as the questions herein presented are concerned, and considering appellants' position, it must be held that respondent was actually operating under a set of by-laws, and that, in so far as that question is concerned, appellants are entitled to no relief because of the situation which the record discloses.

Appellants refused to renew their contracts, and now stand as associate members of respondent corporation (Chap. 102, Laws 1925, Ex. Ses., p. 153; Rem. 1927 Sup., § 2883). No one is attempting to deny them the full measure of their rights as such associate members, which they may exercise at their pleasure.

Appellants complain of the deductions made by respondent pursuant to the "Standard Marketing Contract," the pertinent paragraph of which reads as follows:

"The association agrees to re-sell all farm products delivered to it under this contract at the best terms obtainable under market conditions as determined by the directors in the exercise of their discretion. After deducting from the resale price all necessary selling, overhead and other costs and expenses, and an additional amount of not to exceed three per cent of the gross sales price for miscellaneous expense fund, the association agrees to pay to the grower his proportion

of the net amount remaining, based upon the price received for the respective crops delivered by him as compared with prices received for similar crops of like grade of other growers under similar contracts."

It must be remembered that appellants are not seeking to restrain respondent from maintaining a certain course of conduct, but are claiming that, because in the past, respondent, apparently with the active cooperation of appellants, or at least many of them, made certain deductions from the proceeds of farm products belonging to its membership and handled by respondent, appellants are now entitled to have respondent thrown into a receivership and its property divided among its membership.

The officers of respondent used certain of the money which respondent received through the deductions above referred to, in the purchase of a warehouse, of which action appellants complain. It does not appear that any objection to the purchase of the warehouse was made at the time this action was taken, and the same is true in so far as the deductions made from the members' money are concerned. Under its articles of incorporation, respondent has power to own real estate, and the warehouse, as far as the record shows, has been used only for corporate purposes, in connection with which it has proved very convenient.

Whatever might have been the situation had these questions in some manner been presented before the warehouse had been purchased or some of the deductions made, we cannot hold that, because it did these things, respondent should be thrown into receivership and its property divided. Neither can we follow appellants in their argument that, because the deductions made may have operated unevenly as between certain classes of respondent's members, they are now entitled to the relief which they seek. Appellants ask an ac-

counting, a receivership and the conversion of respondent's assets into cash. No question as to appellant's rights as associate members of respondent is before us.

It is evident that most of the members of respondent, including many of those associated with appellants in prosecuting this litigation, at one time or another obtained supplies or cash advances from respondent. Consideration of the entire situation satisfies us that appellants cannot at this time be heard to complain of the policy followed by respondent in either advancing cash or furnishing material. In connection with these matters, appellants cite certain authorities, including several opinions of this court. These cases have all been carefully examined, and are not authority for appellants' contention that they are in this action entitled to relief.

Questions bearing some similarity to those here presented were considered by this court in the case of *Washington Cooperative etc. Ass'n v. Taylor,* 122 Wash. 466, 210 Pac. 806. In the case cited, the authority of the cooperative association was upheld, and it was determined that a member thereof was not entitled to take advantage of certain acts of the corporation which bear some resemblance to those here complained of by appellants.

Respondent for the first time contracted with Mojonnier in 1928. The contract, by vote of respondent, was renewed from year to year, up to and including January, 1931, when, at a meeting of the members of respondent, it was renewed without objection. Appellants contend that this contract constitutes a departure from the purposes and powers of respondent, that the same was beyond the power of the board of trustees to execute, and that, on its face, it defeats the purpose for which the association was organized. Ap-

pellants argue that the making of such an agreement constitutes a breach of contract between respondent and each of its members, thus entitling the members to terminate the existing relationship and recover any interest they may have in respondent's property.

With the policy of the contract, the courts have no concern. It is evident that, for several years, practically all respondent's members thought the contract advantageous. This, of course, does not estop appellants from now urging that the contract is *ultra vires* the corporate powers of respondent. The contract was entered into for a limited period, and does not attempt to bind respondent for more than the shortest possible period for which such contract could be entered into. We have examined the contract, and hold that it contains no provisions which entitle appellants to any portion of the relief which they seek in this action.

It seems inevitable that a certain amount of irregularity enter into the corporate structure of such associations as respondent. It is clear that appellants and their associates, who had a very large share in the management of respondent up to January, 1932, conducted the same ably and intelligently, and established respondent upon a very satisfactory basis. Enlightened by their loss of control of the association, appellants now bitterly complain of that in which they saw no wrong during the period prior to the unfortunate entry of factional disputes into the affairs of respondent.

The record before us discloses nothing which entitles appellants to the relief which they seek, and the judgment appealed from is accordingly affirmed.

TOLMAN, C. J., MAIN, and STEINERT, JJ., concur.