[No. 10125-8-III. Division Three. July 5, 1990.]

LARRY WILKERSON, ET AL, *Appellants,* v. RAY WEGNER, ET AL, *Defendants,* ZAIDA LANPHERE, ET AL, *Respondents.*

*Nathan Kirk* and *Heidlebaugh, Reinig, Kirk & Barber,* for appellants.

*Robert Schultz* and *Leavy, Schultz & Sweeney, P.S.,* for respondents.

GREEN, J.—Lanphere Quarter Horses, Inc., an Oregon corporation, advertised a contest in which Larry and Lori

Wilkerson intended to participate. The event was canceled and the Wilkersons filed this action for the prize money against the corporation, Zaida Lanphere and the estate of Jack Lanphere (Lanpheres).[1] The court granted Lanpheres' motion for summary judgment. The Wilkersons appeal.

They contend the court erred in ruling (1) the corporation was validly formed and insulated the individual defendants from liability; (2) their claim was speculative; and erred (3) by not granting their motion to amend the complaint to include a claim for specific performance. We affirm.

In 1987 Lanphere Quarter Horses, Inc., advertised a "first annual weanling halter futurity" to be held in Hermiston, Oregon, in October 1989. A halter futurity is a contest in which foals are judged and awarded prize money based on qualitative criteria. The only parties eligible to participate in the event would be those who bred their mares with, and obtained a foal that was the offspring of, either "Conclusive Review" or "The Ambition", the world class stallions mentioned in the advertisement. There were to be no other "fees" for the futurity. The advertisement set out the prize money, $37,500, to be awarded for the foals of each stallion:

| First Place Colt: | $10,000.00 |
| Second Place Colt: | 5,000.00 |
| Third Place Colt: | 2,500.00 |
| Fourth Place Colt: | 1,250.00 |
| First Place Filly: | 10,000.00 |
| Second Place Filly: | 5,000.00 |
| Third Place Filly: | 2,500.00 |
| Fourth Place Filly: | 1,250.00 |

A total purse of $75,000 was to be divided among 16 prize winners. Judging was to be done by three judges approved

---

[1]Ray and Jane Doe Wegner were also named as defendants and have since been dismissed from the action. Additionally, we note the only evidence is that the estate of Jack Lanphere has not been legally established.

by the American Quarter Horse Association nominated and selected by the owners of the foals.

After the advertisement was published in 1987 and early 1988, the Wilkersons, residents of Benton County, entered into three separate stallion service contracts with Lanphere Quarter Horses, Inc., the total cost being $800. As a result, two foals were born of Conclusive Review and one of The Ambition. These contracts guaranteed a live foal under certain breeding conditions, but made no reference to the futurity. About the same time, Lanphere Quarter Horses, Inc., entered into 31 other similar contracts with at least 22 different parties. Subsequently, Jack Lanphere, Sr., the company's president, died and the two corporate officers responsible for administering the futurity resigned. The event was then canceled.

On October 13, 1988, the Wilkersons commenced this action for damages. Thereafter, they obtained an "assignment of prize money claims" from the owners of foals from five other mares which had been bred to the two stallions. On January 5, 1989, the Wilkersons amended their complaint alleging Lanphere Quarter Horses, Inc., was never incorporated, and they relied on the advertisement for prize money when entering into the breeding contracts. Also in reliance on the futurity, they bought a mare that was carrying a foal by Conclusive Review. They also alleged the assignments and sought judgment against "Defendants Lanphere" for the $75,000 futurity purse; or, in the alternative, the prize money they could win based upon the actual sex of the foals to be born.

Lanpheres answered and moved for summary judgment on the basis the corporation was viable and the claim was speculative. The Wilkersons then filed an unsworn statement they entered into the breeding contracts only because of the futurity. Subsequently, the Wilkersons moved to amend their complaint a second time to include a claim for

specific performance. The Lanpheres' motion for summary judgment was granted.[2]

■ On review of a summary judgment, this court engages in the same inquiry as the trial court. Summary judgment is proper only when the pleadings, *affidavits*,[3] depositions and admissions on file and reasonable inferences therefrom, viewed in a light most favorable to the nonmoving party, demonstrate no issue of material fact exists and the moving party is entitled to judgment as a matter of law. CR 56(c); *Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982).

■ First, the Wilkersons contend the court erred in ruling Lanphere Quarter Horses, Inc., was a valid existing corporation. They rely on the certification of Robin Walling, secretary–treasurer of the corporation, which states no capital contribution was ever made to the corporation and thus it was not adequately capitalized to meet the liability flowing from the futurity. This, they assert, justifies piercing the corporate veil to hold the individual defendants personally liable. We find no error.

Oregon Revised Statutes § 60.051, in effect at the time Lanphere Quarter Horses, Inc., was incorporated, provides:

> (1) Unless a delayed effective date is specified, the corporate existence begins when the articles of incorporation are filed by the Secretary of State.
> (2) The Secretary of State's filing of the articles of incorporation is *conclusive proof that the incorporators satisfied all conditions precedent to incorporation* except in a proceeding by the state to cancel or revoke the incorporation or involuntarily dissolve the corporation.

---

[2]The court considered Lanpheres' motion as one to dismiss for failure to state a claim for which relief can be granted. CR 12(b)(6). When the court dismisses an action under this rule, but considers supporting affidavits, the matter is treated as a summary judgment. *See St. Yves v. Mid State Bank*, 111 Wn.2d 374, 377, 757 P.2d 1384 (1988).

[3]The certifications considered by the trial court were not signed under penalty of perjury nor were they sworn statements. While not raised by the parties, we do not consider such "certifications" to be competent proof in a summary judgment proceeding. RCW 9A.72.085.

(Italics ours.) Here, the articles of incorporation for Lanphere Quarter Horses, Inc., were filed on July 22, 1987. The corporation came into existence on that date. Thereafter, the 34 stallion service contracts were executed, all in the corporate name. Thus, the Wilkersons are precluded from claiming nonexistence of the corporation in order to hold individual shareholders personally liable. Cf. *Refsnes v. Myers,* 164 Wash. 205, 209, 2 P.2d 656 (1931); *Washington Co-op. Egg & Poultry Ass'n v. Taylor,* 122 Wash. 466, 472, 210 P. 806 (1922).

Second, the Wilkersons contend the court erred in ruling their claim was speculative. They assert the breeding contracts were an acceptance of the offer of the futurity and since they are the only claimants, they are entitled to the prize money.

■ Mere speculation that a prize would have been won by a prospective contestant who was denied an opportunity to participate does not give rise to recoverable damages for breach of contract. *Phillips v. Pantages Theatre Co.,* 163 Wash. 303, 304, 300 P. 1048 (1931). In *Phillips,* the theater advertised a "movie contest for beginners". There were six preliminary contests with the winner of each entitled to enter the final contest for a 2-week, all expense paid trip to Hollywood. The winner was determined by the applause of the audience. Mildred Phillips won a preliminary contest, but for an undisclosed reason was not allowed to further participate. She sued the theater for breach of contract. The court assumed, arguendo, a contract existed and held at page 304:

> Whether the appellant would have won the final contest . . . depended upon the applause from the audience, and this was a matter which rested purely on speculation and conjecture. Without either the winning of the final contest, or substantial proof that she would have won had she been permitted to enter, no recovery can be had, because, as indicated, one of the essential elements of the appellant's case rested purely upon speculation and conjecture. Even though the appellant may have been entitled to nominal damages, the judgment should not be reversed and a new trial ordered for this reason.

That is the situation here. The Wilkersons entered into 3 of the 34 stallion service contracts. They obtained assignments of potential prize winnings from five holders of service contracts, but not until after they knew the contest was canceled. The judging of the foals was subjective and, like *Phillips,* the Wilkersons could produce no evidence that any of their foals would have been selected by the judges. Thus, their claim rests only on conjecture and does not support a cause of action for damages.

██ Third, the Wilkersons contend the court erred in denying their motion to amend their complaint to include a claim for specific performance. We find no error. The motion was made after the issue was joined by a responsive pleading and the motion for summary judgment had been filed. In these circumstances, the court did not abuse its discretion by refusing to grant the motion.

Affirmed.

MUNSON, C.J., and COLE, J. Pro Tem., concur.