IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Domestic Violence Protection Order for: | ) ) ) | No. 39952-4-III (consolidated with No. 39953-2-III) |
| BONITA KELLEHER. | ) | |
| _____ | ) ) | |
| BONITA KELLEHER, | ) ) | |
| Respondent, | ) ) | UNPUBLISHED OPINION |
| v. | ) ) | |
| CHAD A. PIERCE, | ) ) | |
| Appellant, | ) ) | |
| CITY OF QUINCY, a Washington municipal corporation, | ) ) ) | |
| Defendant. | ) ) | |

PER CURIAM — Chad Pierce attempts to appeal several rulings and orders in his long-standing dispute with his neighbor. We conclude that several rulings and orders are not properly before us, address the few that are, and affirm.

FACTS

To understand why the proper scope of appeal is narrow, it is necessary to review the lengthy factual and procedural history of the neighbors' dispute.

In April 2021, Bonita Kelleher refused Chad Pierce's requests to remove the arborvitae shrubs growing along their shared property line. Kelleher's refusal enraged Pierce, who responded by threatening to destroy the shrubs.

Three months later, Kelleher asked Jenny Snider, Pierce's girlfriend, to remove the garbage that had accumulated on Snider's and Pierce's side of the arborvitaes. Snider agreed, but, in turn, asked Kelleher to recalibrate her sprinklers, which Snider complained were spraying across the property line into hers and Pierce's yard. Kelleher complied with Snider's request.

When garbage again accumulated on Snider's and Pierce's side of the arborvitaes, Kelleher approached Snider in her yard. Before the two could speak, Pierce charged out of the couple's house and began threatening Kelleher, demanding that she not step foot on his property. The interaction was hostile enough that Kelleher called the police.

One month later, Snider and Pierce left a handwritten letter in Kelleher's mailbox again demanding that she remove the arborvitaes, which, the couple argued, encroached over the property line. The letter gave Kelleher two days to remove the shrubs before

Pierce himself would cut them down and charge Kelleher for his work. The letter ended, "<u>Do</u> <u>Not</u> set foot on my land again . . . last warning." Clerk's Papers (CP) at 11. Around this time, Pierce angled his home's security cameras toward Kelleher's front door and informed her that he was recording her movements.

After receiving the letter, Kelleher hired a surveyor to place stakes along the property line separating the properties. The survey determined that the arborvitaes grew along the property line. While the surveyor worked, Pierce ranted and yelled at him.

The survey also revealed that Kelleher's sprinklers encroached into Snider's and Pierce's property. With the help of her brother, Kelleher attempted to remove the part of her sprinkler system that was over her boundary. While they were working, Pierce threatened to kill Kelleher's brother and stated that he had killed before. Kelleher reported the incident to the police.

One month after leaving the letter in Kelleher's mailbox, Pierce again accosted Kelleher. On this occasion, Kelleher's neighbor heard Pierce shouting "F-bombs" from two lots away. CP at 12. When the neighbor investigated, he saw Pierce shouting at Kelleher that he would "beat the shit out of [her]." CP at 12.

Two weeks later, Kelleher petitioned the trial court for a protection order against Pierce.

No. 39952-4-III; No. 39953-2-III
*Kelleher v. Pierce*

*Procedural history: original order*

In her petition, Kelleher alleged the above facts and asked the trial court to restrain

Pierce from (1) contacting her, (2) surveilling her, or (3) entering her property. She also

asked the court to award attorney fees and costs to her and to order Pierce to surrender his

firearms.

The trial court heard Kelleher's petition on October 12, 2021. Ahead of the

hearing, Pierce, acting pro se,[1] filed a response in which he denied threatening Kelleher,

claiming he threatened only to "kick her ass in court." CP at 22. Pierce claimed the

surveyor Kelleher had hired, Matt Walters, had heard him issue this threat and

remembered it the way he remembered it. Pierce further claimed that Kelleher's attorney

had interviewed Walters and concealed Walters' corroborative statements. As to

surveillance, Pierce claimed his security cameras were intended only to detect trespassers

on his property. Also, although Pierce denied threatening to kill Kelleher's brother, he

admitted threatening to "kick his ass" if he did not get off his property. CP at 23.

At the October 12, 2021 hearing, Kelleher offered no evidence and instead rested

on her sworn petition and declarations. While Pierce also did not call witnesses or offer

evidence, he did ask the court itself to seek testimony from Matt Walters, who Pierce

---

[1] At all phases of this litigation, Pierce has acted pro se.

4

claimed would exonerate him with respect to any threats he had allegedly made against Kelleher. In response, Kelleher argued that Walters had not been present when Pierce had threatened to hurt her. Walters did not testify at the hearing.

In its oral ruling, the trial court noted that the protection order request was a close call because "there weren't any direct threats made directly to [Kelleher]." Rep. of Proc. (Oct. 12, 2021) (RP) at 35. Nevertheless, the court found that Pierce's conduct—and in particular his "swearing"—had interfered with Kelleher's quiet enjoyment of her property. RP at 35. Although the court granted the protection order, it prohibited Pierce only from entering Kelleher's property. The court did not order Pierce to discontinue or alter his surveillance activities, surrender his firearms, or pay Kelleher's attorney fees and costs. Pierce did not appeal the original protection order.

*Procedural history: renewed order*

One year later, Kelleher petitioned the trial court to renew the protection order. In her petition, she alleged new hostilities from Pierce, including:

- an incident in March 2022 when Pierce had called the police on Kelleher for walking down the alley behind his house and then submitted a public records request for the bodycam footage of the police response;

5

an incident when Pierce had harassed the technicians Kelleher had hired to install security cameras at her home;

• several incidents where Pierce, or else Snider at Pierce's direction, had photographed visitors to Kelleher's home, and

• an incident when Pierce and Snider had shouted obscenities out their window at Kelleher as she had walked into her house.

*See* CP at 46-47.

In response, Pierce filed "Respondent's Reply Motion to Dismiss Based Upon Newely [sic] Discovered Evidence and Actual Innocence." CP at 51 (some capitalization omitted). In that motion, Pierce admitted photographing Kelleher and her visitors but claimed he did so only to prove that Kelleher was not scared of him. Pierce insisted he had never violated the protection order.

In addition to his motion to dismiss, Pierce filed motions seeking subpoenas for Matt Walters and fire marshal Jim Kling. As already noted, Pierce believed Walters could refute Kelleher's claim that he had threatened to kick Kelleher's ass. Pierce believed Kling would also refute one of Kelleher's claims.

On October 11, 2022, the trial court heard Kelleher's motion to renew the protective order. Pierce did not appear, and the court granted Kelleher's motion. Pierce

later moved to vacate the order on the grounds that technical difficulties had prevented him from attending the October 11 hearing.[2]

On November 4, 2022, the trial court heard Pierce's motion to vacate. Ahead of that hearing, at 8:16 a.m., Pierce disqualified Judge Tyson Hill. At the hearing itself, Judge Anna Gigliotti granted Pierce's motion to vacate and reset the renewal motion for a November 21, 2022 hearing. However, Judge Gigliotti at the motion-to-vacate hearing also denied Pierce's motions for subpoenas for Matt Walters and Jim Kling. After a tense exchange with the bench, Pierce insulted Judge Gigliotti. After the hearing, Pierce filed a withdrawal of his notice of disqualification against Judge Hill and contemporaneously filed a notice of disqualification against Judge Gigliotti. Judge Gigliotti later denied this request and was the trial judge on the later orders.

At the November 21, 2022 hearing to decide Kelleher's motion to renew, Pierce continued to object to the court's refusal to issue subpoenas for Walters and Kling. In response, the court reminded Pierce that the only matter before it was the renewal of the protection order and not the merits of the order itself. The court stated that renewal arose under RCW 7.105.405 and invited Pierce to address Kelleher's renewal motion.

---

[2] Concurrent with his motion to vacate, Pierce also appealed the renewed order to this court. Our court later terminated review of that appeal, citing Pierce's failure to pay the filing fee or else move for an order of indigency.

7

Pierce did not meaningfully address Kelleher's claims about his actions over the past year, except to insist he never violated the protection order. Pierce repeatedly accused Kelleher and her counsel of perjury and misrepresentation.

The trial court found that Pierce had failed to carry his burden under RCW 7.105.405 and renewed the protection order for two years. Pierce did not appeal that order.

*Procedural history: motion to modify renewed order*

In August 2023, Kelleher sought modification of the renewed order on the grounds that Pierce, through public records requests, was seeking body camera footage showing the inside of her house. Kelleher asked the court to prohibit Pierce from making such requests and to convert the two-year protection order into a permanent order. Kelleher also asked the court to prohibit Pierce from filing building code violations against her.

The trial court heard Kelleher's motion to modify on September 1, 2023, having consolidated the motion with a separate matter in which Kelleher sought to enjoin the city of Quincy from complying with Pierce's records requests. Pierce did not respond to Kelleher's motion to modify and did not appear at the September 1, 2023 hearing.

In one September 1, 2023 order, the trial court granted Kelleher's motion to bar Pierce from making intrusive public records requests and further agreed to convert the

two-year protection order into a permanent order.  In a separate September 1, 2023 order,

the court enjoined the city of Quincy from releasing body camera footage showing the

inside of Kelleher's house.

On September 7, 2023, Pierce filed a notice of appeal, designating and attaching

both September 1, 2023 orders.  Also, on that date, Pierce filed a 34-page motion for

reconsideration, containing 88 separately numbered paragraphs of "facts."  CP at 203-47.

The "facts" were not in the form of a sworn affidavit or an unsworn declaration in the

form required by GR 13.

In his motion, Pierce argued (1) the "facts" as described in his motion establish

that the court lacked a basis to enter or renew the protection order, (2) the court

improperly allowed Kelleher's lawyer to seek relief on shortened time, giving Pierce only

three to five days to respond, which was a prejudicial error of constitutional magnitude,

(3) Kelleher's motion to restrain the city of Quincy from releasing body camera footage,

she failed to comply with chapter 42.56 RCW, and (4) the court lacked jurisdiction to rule

on the two August 21, 2023 motions.

The trial court, finding no merit in Pierce's reconsideration motion, denied the

motion without requesting oral argument or briefing.

ANALYSIS

To his credit, Pierce organizes his numerous lengthy arguments by first providing a clear description of his seven claims of error, together with numerous subparts. Before we address his arguments, we first set forth general rules that assist in determining which of Pierce's arguments are properly before us:

In general, an appeal must be filed within 30 days after entry of the decision the appellant seeks to have reviewed. RAP 5.2(a).

Also, subject to three exceptions, an appellate court will not consider a claim of error that was not first raised to the trial court. RAP 2.5(a). "The purpose of this rule is to allow the trial court to correct any error called to its attention, avoiding unnecessary appeals and retrials, and encouraging the efficient use of judicial resources." *R.K. v. United States Bowling Congress*, 27 Wn. App. 2d 187, 201, 531 P.3d 901 (2023) (citing *State v. O'Hara*, 167 Wn.2d 91, 98, 217 P.3d 756 (2009)). One exception to this rule is that we will review an unpreserved claim of manifest constitutional error. RAP 2.5(a)(3).

Finally, the factual grounds of a motion must be supported by an affidavit or an unsworn declaration meeting the requirements of GR 13. *See* CR 7(b)(4) (affidavits used in motion practice); *Wilkerson v. Wegner*, 58 Wn. App. 404, 408 n.3, 793 P.2d 983 (1990)

(certifications considered by trial court were not signed under penalty of perjury and so were not competent proof of facts).

With the above rules in mind, the following claims of error are not reviewable because:

\*    They involve orders entered more than 30 days before Pierce's notice of appeal: claim of error 1, including all subparts except 1.vi, and claim of error 2.

\*    The evidence relied on was not supported by an affidavit or an unsworn declaration meeting the requirements of GR 13: claim of error 3B.

\*    The argument was not first raised to the trial court and does not concern a claim of manifest constitutional error: claim of error 1.vi, and claims of error 5 & 6.

We conclude that the following claims of error are properly before us: (1) claim of error 3A, (2) claim of error 4, and (3) claim of error 7.  We now discuss these claims of error:

1.    <u>Claim of error 3A</u>: *Uncontested reconsideration motion*

Pierce argues the trial court abused its discretion by not granting his reconsideration motion because Kelleher's failure to deny his pleading causes his assertions to be deemed admitted.  His argument is based on a misreading of CR 8(d).

11

CR 8(a) clarifies that the rule applies to a narrow set of pleadings, such as complaints, counterclaims, cross claims, and third party claims. CR 8(d) states, "Averments in a pleading to which a responsive pleading is required . . . are admitted when not denied in the responsive pleading." CR 8(d) continues, "Averments in a pleading to which no responsive pleading is required or permitted shall be taken as denied or avoided." Pierce's reconsideration motion was not the type of pleading to which CR 8(d) applies. That is, Pierce's motion was not a complaint, counterclaim, cross claim, or a third party claim.

2. Claim of error 4: *Judge Gigliotti was disqualified from ruling on the September 1, 2023 consolidated motions*

Pierce next argues that Judge Gigliotti erred by ruling on Kelleher's consolidated motions because he had properly disqualified her from hearing further matters. We disagree.

As noted above, early on November 4, 2022, Pierce filed a notice of disqualification against Judge Tyson Hill. Later that morning, Judge Anna Gigliotti granted Pierce's motion to vacate the renewed order, and denied his request to issue subpoenas for two witnesses. Hours later, Pierce moved to withdraw his earlier-filed notice of disqualification against Judge Hill and contemporaneously filed a notice of disqualification against Judge Gigliotti.

12

RCW 4.12.050(1)(a) prohibits a party from disqualifying a judge who has previously made a discretionary ruling. Judge Gigliotti made discretionary rulings when she granted Pierce's motion to vacate the renewed order and denied his request to issue subpoenas for two witnesses. Under RCW 4.12.050(1)(a), Pierce's notice of disqualification was therefore ineffective.

Moreover, RCW 4.12.050(1)(d) prohibits a party from filing more than one notice of disqualification. Pierce's second notice of disqualification, filed against Judge Gigliotti, was ineffective for this additional reason.

3.  Claim of error 7: *The trial court's injunction is unlawful and Kelleher failed to follow proper procedures when seeking to enjoin him from obtaining public records*

Kelleher first argues the trial court's order enjoining the city of Quincy from answering his request for body camera footage is unlawful because it interferes with his constitutional right to file a public records request. We disagree. There is no constitutional right to file a public records request. The right is statutory. RCW 42.56.080(2).

Kelleher next argues that RCW 42.56.540 requires a person to file a new civil case when seeking to enjoin disclosure of a public records request. We disagree.

No. 39952-4-III; No. 39953-2-III
*Kelleher v. Pierce*

RCW 42.56.540 expressly permits a person to seek to enjoin disclosure by "motion and affidavit," which was done here.[3]

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Lawrence-Berrey, C.J. Cooney, J. Murphy, J.

_____

[3] Although Kelleher filed an unsworn declaration rather than an affidavit, as described by RCW 42.56.540, the two are treated the same. RCW 5.50.030.